A08A0080, A08A0081. BRAGG et al. v. OXFORD
CONSTRUCTION COMPANY (two cases).
(658 SE2d 198)

BLACKBURN, Presiding Judge.

In two cases based on claims of alleged negligent road construction by Oxford Construction Company ("Oxford"), Francesca and Kenneth Bragg, on behalf of themselves, their minor daughter, and their stillborn child, appeal from the trial court's grant of summary judgment to Oxford, an independent contractor working for Dougherty County. The Braggs contend that the trial court erred in ruling that their claims against Oxford failed because their injuries occurred after Oxford's road work was completed and accepted by the County. As the two cases involve substantially the same issues, we have consolidated them for review, and, for the reasons that follow, we affirm in both cases.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Matjoulis v. Integon Gen. Ins. Corp.*[1]

---

[4] The state's motion to dismiss Bynum's appeal for lack of service is hereby denied.

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

So viewed, the record shows that in April 2004, Francesca, who was approximately seven months pregnant, was driving with her minor daughter in the car. It was raining heavily, and, without warning, an approaching car spun into Francesca's lane, where the two cars collided, killing the other driver and injuring Francesca and her daughter. After they were both taken to the hospital, Francesca's unborn child was delivered stillborn later that evening.

Seven months prior, in August and September 2003, pursuant to a contract awarded by Dougherty County, Oxford had undertaken and completed spot leveling work to correct prior sinking in the section of road where the collision occurred. Alleging that Oxford's work was negligent and caused rainwater to pool in the road on which the oncoming driver hydroplaned, the Braggs sued Oxford for damages arising from the collision. Following discovery, Oxford moved for summary judgment, which the trial court granted based on the acceptance doctrine, giving rise to this appeal.

> The long-established acceptance doctrine provides that where the work of an independent contractor is completed, turned over to, and accepted by the owner, the contractor is not liable to third persons for damages or injuries subsequently suffered by reason of the condition of the work, even though he was negligent in carrying out the contract, at least, if the defect is not hidden but readily observable on reasonable inspection. Unless the work performed by the contractor falls within an exception to the doctrine, when the work is finished by the contractor and accepted by his employer, the liability of the contractor generally ceases and the employer becomes answerable for damages which may thereafter accrue from the defective conditions of the work.

(Citation and punctuation omitted.) *Smith v. Dabbs-Williams Gen. Contractors.*[2] See *Young v. Smith & Kelly Co.;*[3] *Clive v. Gregory*[4] (whole court) (applying acceptance doctrine).

a. *Application of the Acceptance Doctrine.* Here, the County awarded a contract to Oxford to perform "spot leveling" to correct sinking in the roadway, which had previously been rebuilt by another contractor two years prior. Oxford's contract called for Oxford to overlay asphalt patches in areas specified by the County and in

[2] *Smith v. Dabbs-Williams Gen. Contractors,* 287 Ga. App. 646, 647 (653 SE2d 87) (2007).
[3] *Young v. Smith & Kelly Co.,* 124 Ga. 475 (52 SE 765) (1905).
[4] *Clive v. Gregory,* 280 Ga. App. 836, 845 (5) (635 SE2d 188) (2006).

accordance with certain specifications. The contract did not include removal of existing asphalt or excavation of the road base.

Undisputed evidence showed that during Oxford's paving work, the County's on-site engineer, who controlled the specific locations to be paved and otherwise inspected Oxford's work, observed that the underground road base was "mushy," and the road itself "wiggled" slightly while heavy construction equipment rolled across it. He attributed this to underground wetness due to local hydrology (not related to Oxford's work), and recorded in his job diary that he did not expect the area to "hold up."

The evidence also showed that Oxford personnel spoke to the County engineer and requested to perform more overlay work in the area to address any settling, but the County engineer refused to let Oxford perform additional work, reasoning that additional work could further destabilize the subsurface. The County engineer identified the issue to the County's director of public works, who had overall responsibility for County operations and who told the engineer to "wait and see" if the subsurface would dry and become more solid. By September 24, 2003, the subsurface had dried, the area had become firm, and the County engineer was satisfied with Oxford's work. After completion of the work, the County mailed Oxford a written final statement which represented the County's final acceptance of Oxford's work.

Based on the undisputed evidence that (1) the County inspected Oxford's work and was satisfied with Oxford's performance under the contract, and (2) the County issued a final written statement representing the County's acceptance of Oxford's work, we conclude that the trial court did not err in ruling that the acceptance doctrine barred recovery against Oxford for injuries allegedly caused by Oxford's work after the County accepted the work. See *Ogles v. E. A. Mann & Co.*[5] ("[i]n cases of roadway work, this court has stated that a road contractor cannot be held responsible for completed work over which it no longer exercises any control. A contractor has no authority, control or responsibility over public ways outside the boundary of its contract provisions") (punctuation omitted).

Nor do we find that any exceptions to the acceptance doctrine apply here. In certain cases, Georgia courts have recognized exceptions to the doctrine where the contractor's work was inherently or intrinsically dangerous, a nuisance per se, or so negligently defective as to be imminently dangerous to third persons. See *David Allen Co. v. Benton*.[6] The Braggs do not contend, nor is there supporting

[5] *Ogles v. E. A. Mann & Co.*, 277 Ga. App. 22, 24 (1) (625 SE2d 425) (2005).

[6] *David Allen Co. v. Benton*, 260 Ga. 557, 558 (398 SE2d 191) (1990).

evidence, that Oxford's work was intrinsically dangerous or a nuisance per se. See, e.g., *Ogles*, supra, 277 Ga. App. at 25 (inherently dangerous operations include "the use of propane gas, blasting operations, fumigation of premises, spraying from airplanes, the escape of a dangerous animal, emitting sparks from a railway engine and raising an embankment that is unguarded") (punctuation omitted); *Barnes v. St. Stephen's Missionary Baptist Church*[7] ("a nuisance per se is an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings"). Further, as found by the trial court in both cases brought by the Braggs, Oxford's work was not *imminently* dangerous to third persons. The County's engineer personally inspected the work and testified that the completed project was within acceptable tolerances, and there was unchallenged evidence of several months of frequent safe travel over the road. Accordingly, we discern no error in the trial court's conclusion that Oxford's work presented no *imminent* danger to third parties. See *Ogles*, supra, 277 Ga. App. at 25 (1) (finding no imminent danger in paving work in the absence of evidence of potholes, crevices, or cracks).

The Braggs argue that this Court should abandon application of the acceptance doctrine in Georgia. However, in light of the Supreme Court of Georgia precedent holding that the acceptance doctrine operates to bar recovery in cases such as the one here, we are not authorized to hold otherwise. See, e.g., *David Allen Co.*, supra, 260 Ga. at 558; *Young*, supra, 124 Ga. at 476.

The Braggs also point to testimony from the County engineer that "we did good . . . [w]e did what you see there today," and that the firmness of the base "hasn't changed since it set up, it's still the same way," to support their assertion that the road, at completion, was the same as it was at the time of their expert's later inspection, which noted alleged defects in the road.[8] Even construing this testimony as evidence of negligence on the part of Oxford, this Court has held that "even though [the contractor] was negligent in carrying out the contract[, the contractor is not liable after the acceptance of his work] if the defect is not hidden but readily observable on reasonable inspection." (Punctuation omitted.) *Ogles*, supra, 277 Ga. App. at 24

---

[7] *Barnes v. St. Stephen's Missionary Baptist Church*, 260 Ga. App. 765, 769 (3), n. 3 (580 SE2d 587) (2003).

[8] The Braggs' expert testified that his subsequent measurements of the road showed it to be out of compliance with applicable specifications, but he admitted that he did not determine the road conditions as of the time the work was completed, because he visited the site ten weeks after the accident, i.e., approximately nine months after the work was completed. He further conceded that Oxford was not authorized under the contract to address any subsurface conditions.

(1). Here, the Braggs' own expert conceded that the alleged defects would have been open and obvious to the County during their inspections. Therefore, as it is undisputed that the County itself (1) was satisfied that Oxford's work was within contract specifications and (2) forbade Oxford from performing any additional work at the site, we affirm the trial court's application of the acceptance doctrine here.

b. *Oxford's Contract Did Not Waive Defense.* The Braggs also contend that Oxford's contract, in which it agreed to indemnify and hold harmless the County for any liabilities arising from the work, waived application of the acceptance doctrine in this case. However, during oral argument, it became apparent that the contract provision had not been properly made a part of the record. After this Court received a supplemental record from the trial court, the Braggs conceded that the indemnification provision at issue here was never properly made part of the trial record, which leaves us with nothing to review, despite the erroneous supplement. See *Wells Fargo Home Mtg. v. Cook.*[9]

Nevertheless, we note that the contractual provision upon which the Braggs rely — that Oxford "shall be solely responsible for all liabilities, suits, actions, and claims . . . whether due to the negligence of [Oxford], Doughtery County, or otherwise," and that Oxford "agrees to indemnify and save harmless the [County] from all liabilities, charges, expenses and costs . . . by reason of any such injuries, damages liabilities, claims, suits, or losses" — governs liability as between Oxford and the County, for the County's benefit. It does not provide for a benefit to third parties such as the Braggs.

> [I]n order for a third party to have standing to enforce a contract . . . it must appear clearly from the contract that it was intended for the benefit of the third party. The mere fact that the third party would benefit from performance of the agreement is not alone sufficient. Unless such an intention is shown on the face of the contract, defendant is under no duty to the third party and consequently plaintiff acquires no right as the third-party beneficiary.

(Citations and punctuation omitted.) *Satilla Community Svc. Bd. v. Satilla Health Svcs.*[10] Accordingly, we discern no error.

---

[9] *Wells Fargo Home Mtg. v. Cook*, 267 Ga. App. 368, 369 (1) (599 SE2d 319) (2004).

[10] *Satilla Community Svc. Bd. v. Satilla Health Svcs.*, 275 Ga. 805, 810 (2) (573 SE2d 31) (2002).

c. *County Effectuated Acceptance.* The Braggs finally contend that the County never actually accepted Oxford's work, because the County did not write a formal letter explicitly and specifically indicating its final acceptance. However, this ignores the undisputed evidence that the County, in keeping with its long-held procedure for accepting the work of County contractors, did issue Oxford a written "final statement," which signified the County's final acceptance of Oxford's work. Both the County director of public works (who held the position for 22 years) and the County's on-site engineer (who consulted for the County for 12 years) averred that the County's acceptance here, i.e., issuance of a final statement and payment, was consistent with its long-held practice for final acceptance. Accordingly, this contention is without merit.

*Judgment affirmed in Case Nos. A08A0080 and A08A0081. Miller and Ellington, JJ., concur.*

DECIDED FEBRUARY 15, 2008 

*Brown & Scoccimaro, Ralph O. Scoccimaro, Craig A. Webster,* for appellants.

*Rutherford & Christie, Carrie L. Christie, Angela F. Donaldson, Bondurant, Mixson & Elmore, Frank M. Lowrey IV, Nicole G. Iannarone,* for appellee.