A09A0224. AXCAN SCANDIPHARM, INC. et al. v. SCHWAN'S HOME SERVICE, INC.

(681 SE2d 631)

MILLER, Chief Judge.

This case arises out of an accident that occurred on February 21, 2004 outside Cartersville on Georgia Highway 61 involving a double tractor-trailer driven by Terry Stanton Lytle, an employee of ABF Freight Systems, Inc. ("ABF") and a delivery truck driven by Terry Warman, an employee of Schwan's Home Service, Inc. ("Schwan's"). Axcan Scandipharm, Inc., owner and shipper of the freight at issue, and its subrogated insurer, Mutual Marine Office, Inc. (collectively "Axcan"), filed suit against Schwan's, seeking to recover money damages for the full value of the freight allegedly destroyed in the wreck. The jury returned a verdict for Schwan's as to a portion of the loss, and this Court affirms.

Axcan appeals from the trial court's judgment on the jury's verdict as to damages only, asserting that given Schwan's liability as a joint tortfeasor, it was entitled to recover for the loss of the entire shipment rather than the portion thereof which the jury awarded. In six enumerations of error, Axcan claims that the evidence prohibited the jury from considering whether ABF was a successive, rather than a joint tortfeasor, arguing that the trial court erred (i) in denying its motions in limine seeking to foreclose any testimony at trial regarding the nature of ABF's handling of the freight after the wreck, (ii) in allowing questions and argument at trial suggesting that had the bill of lading labeled the shipment as one of drugs, rather than foodstuffs, the damages would have been less foreseeable to Axcan, and (iii) in denying its motion for a directed verdict on the issue of intervening negligence proximately causing the loss for lack of evidence of ABF's negligence when the shipment, as reassembled,

---

[10] See *Hurley v. State*, 287 Ga. App. 482, 483 (651 SE2d 748) (2007).

was returned to its transfer terminal. By its remaining claims of error, Axcan challenges the trial court's jury charges on bailment and on mitigation of damages.

"This Court reviews the judgment entered by the trial court after approval of a jury verdict upon the any evidence test, absent any material error of law. We review questions of law de novo, applying the plain legal error standard of review." (Citations and punctuation omitted.) *Timmons v. Cook*, 287 Ga. App. 712 (652 SE2d 604) (2007).

So viewed, the evidence at trial revealed that the shipment at issue consisted of three shrink-wrapped pallets consisting of 195 boxes of Canasa prescription suppositories[1] which Axcan through its shipping agent, UPS Logistics, was shipping from Atlanta to Cardinal Healthcare in Zanesville, Ohio via ABF. Following the February 21, 2004 wreck, the Georgia State Patrol called Matthews Garage and Wrecker Service ("Matthews") to the scene to upright the overturned trailers and Schwan's truck and to pick up the damaged freight utilizing three roll-off, twenty yard dumpsters which All-Star Roll-Offs ("All-Star") provided. One Matthews employee testified that ruptured or torn boxes found on the ground were placed in a trash dumpster and taken to a landfill. The boxes thought to be salvageable were still in the overturned trailer. These were off-loaded from the trailer, placed in a second and a third dumpster, tarped, and taken to All-Star's shop where they were put inside in a heated environment. Three days later, ABF instructed All-Star to deliver the dumpsters to its terminal in Ellenwood, Georgia. This All-Star did, off-loading the still tarped dumpsters in ABF's outside yard area for off-loading by hand, as the dumpsters were not compatible with dock-high off-loading. ABF did not regard the shipment to be a high priority because the bill of lading had labeled the shipment as "food stuffs" valued at $3,000 rather than "drugs or pharmaceutical products" valued at "seven hundred and forty thousand some-odd dollars." Two to three days later, ABF unloaded the dumpsters, it having rained throughout the intervening period. One hundred eighty boxes were unloaded. These remained sealed and were not so damaged and wet as to prevent being repalletized and shrink-wrapped. On February 25, 2004, four days after the accident, ABF determined that the condition of the repalletized boxes made them undeliverable, and, on February 27, 2004, dispatched the boxes to a salvage dealer in Missouri for disposal. UPS Logistics notified Axcan of the loss approximately 30 days later, after an inquiry as to the

---

[1] The record shows that the suppositories are a prescription medication for the treatment of ulcerative proctitis, an inflammatory bowel disease.

status of the shipment from Cardinal Healthcare prompted it to contact ABF. ABF, in turn, returned the boxes to its Ellenwood terminal. Axcan sent a representative to inspect the shipment on April 20, 2004, who, based on the external appearance of the boxes alone, determined that the suppositories were undeliverable and authorized their destruction. The jury awarded damages to Axcan of $58,804.05 for total loss damage to 15 boxes of the 195-box shipment valued at $764,452.65.

1. Axcan contends that the evidence prohibited the jury from considering whether ABF was a successive, rather than a joint, tortfeasor, challenging the trial court's (i) denial of its motions in limine seeking to foreclose any testimony at trial regarding ABF's negligence in handling the wrecked freight, (ii) allowance of questions and argument at trial suggesting that had the bill of lading labeled the shipment as one of drugs, rather than foodstuffs, the damages would have been less foreseeable to Axcan, (iii) denial of its motion for a directed verdict on the issue of intervening negligence proximately causing the loss for lack of evidence of ABF's negligence when the shipment, as reassembled, was returned to its transfer terminal. Finding no abuse of discretion upon the complained-of evidentiary rulings and evidence warranting the denial of Axcan's motion for a directed verdict, we disagree. See *Dept. of Transp. v. Mendel*, 237 Ga. App. 900, 902 (2) (517 SE2d 365) (1999) (trial court's decision to admit or exclude evidence reviewed for abuse of discretion); *F. A. F. Motor Cars v. Childers*, 181 Ga. App. 821 (1) (354 SE2d 6) (1987) (standard of review as to trial court's denial of motion for directed verdict is the "any evidence" standard).

Turning to the question of Schwan's status as a joint tortfeasor

> [i]t has always been true that where concert of action appears, a joint tortfeasor relation is presented and all joint tortfeasors are jointly and severally liable for the full amount of plaintiff's damage. However, concert of action is not required — concurrent and independent wrongdoers are joint tortfeasors if their actions produce a single indivisible result and a rational apportionment of damages cannot be made.

(Citations, punctuation and emphasis omitted.) *Gay v. Piggly Wiggly Southern*, 183 Ga. App. 175, 177 (2) (358 SE2d 468) (1987); *The Kroger Co. v. Mays*, 292 Ga. App. 399, 401 (664 SE2d 812) (2008). If, however, an intervening act of an independent or successive wrongdoer is to become "the sole proximate cause of a plaintiff's injuries, the intervening act must not have been foreseeable by defendant, must not have been triggered by defendant's act, and must have been

sufficient by itself to cause the injury." (Punctuation and footnote omitted.) *Imperial Food Supply v. Purvis*, 260 Ga. App. 614, 616 (580 SE2d 342) (2003).

Here, there was evidence upon which the jury could have found that ABF's actions in handling the 180 salvageable boxes of suppositories taken from the wreck was the sole proximate cause for Axcan's loss — specifically, that ABF left the same in open-air dumpsters in the rain constituted evidence of an intervening act not reasonably foreseeable to Schwan. See *Bass v. Seaboard Air Line R. Co.*, 205 Ga. 458, 474 (53 SE2d 895) (1949) (chain of causation not broken by intervening act which is a normal reaction to circumstances created by original negligence). There was evidence showing that the damage to the 180 boxes was not triggered by the wreck. Such boxes were removed from the scene in a salvageable condition and damaged by rain days later. Such evidence indicates that the damage to the 180 boxes was not an indivisible result of the original negligence unsusceptible to reasonable apportionment. And given the destruction of the boxes for water damage, there was evidence that the intervening act of leaving the boxes outside in ABF's yard was an intervening act sufficient of itself to cause the damage.

The question of "whether a subsequent act was foreseeable for proximate cause purposes involves a public policy determination that is best left to a jury. . . . [Cit.]" *Walker v. Giles*, 276 Ga. App. 632, 646 (2) (624 SE2d 191) (2005). Given the foregoing, the trial court's evidentiary rulings were proper and no error resulted upon its refusal to grant Axcan's motion for a directed verdict.

2. Finally, Axcan contends that the trial court erred in charging the jury on bailment and on mitigation of damages. Again, we disagree.

(a) Bailment. The trial court correctly gave Schwan's request to charge bailment to the jury as follows:

> [A] carrier is a person who undertakes the . . . transporting of goods or passengers for compensation. . . . Carriers are required to exercise ordinary care. However, common carriers are bound to exercise extraordinary care. In cases of loss, the presumption of loss is against them, and they shall be liable unless the loss was caused or occasioned by an act of God or the public enemies of the State.

OCGA §§ 46-1-1 (1) and 46-9-1; Suggested Pattern Jury Instructions, Vol. I: Civil, §§ 10.010, 10.030 (4th Ed. 2007).

Axcan argues that the foregoing was error because, as a non-party to the bailment contract (see *Bragg v. Oxford Constr. Co.*, 289 Ga. App. 638, 642 (b) (658 SE2d 198) (2008) (standing to enforce

contract as third party contingent upon whether contract makes clear an intent to benefit third party)), Schwan's was not entitled to a charge suggesting that Schwan's had less responsibility for the damages than common carrier ABF.

Pretermitting whether Axcan objected to the instant charge below by sufficiently stating the specific grounds for the same (*Golden Peanut Co. v. Bass*, 249 Ga. App. 224, 232 (547 SE2d 637) (2001) (when objecting to charges given by the trial court, one must state specific grounds for the objection)), we find that Schwan's status as a third-party beneficiary or lack thereof under a bailment contract to be immaterial to its entitlement to the charge as given.

> It is the duty of the trial court to charge the jury on the law applicable to the issues where there is any evidence on which to predicate the instructions. . . . Further, it is well established an instruction is not abstract or inapplicable where there is any evidence, however slight, on which to predicate it.

(Citations and punctuation omitted.) *Southern Bell Tel. &c. Co. v. Hammond*, 198 Ga. App. 517, 518 (402 SE2d 112) (1991).

Here, the trial court's charge on bailment was properly adjusted to the evidence insofar as it correctly instructed the jury as to the nature of the relationship between Axcan and ABF, i.e., that ABF's duty as to shipper Axcan was one of extraordinary care and the presumption of loss is against common carriers. Further, the degree to which ABF deviated from the extraordinary duty of care it owed Axcan was relevant as to the question of the foreseeability of ABF's conduct in handling the salvageable freight.

Under these circumstances, the trial court's charge on bailment was not error.

(b) Mitigation of Damages. Nor did the trial court err in giving Schwan's requests to charge on mitigation of damages. See Suggested Pattern Jury Instructions, Vol. I: Civil, § 66.015 (4th Ed. 2007) (duty to lessen tort damages). In this regard, Axcan argues that the trial court's instruction on mitigation of damages was error because it was not given notice of the wrecked freight until after it had lost all its value. While the evidence showed that Axcan did not learn of the damage to its freight until approximately one month after the wreck occurred, it nevertheless did not send its inspector to ABF's Ellenwood transfer terminal to evaluate the condition of the 180 boxes of suppositories not destroyed in the wreck until April 20, 2004. At that time, Axcan's inspector only visually evaluated the external condition of the boxes, requested no testing which would have determined whether the suppositories were salvageable, and

instead approved of their incineration.

Inasmuch as the trial court's instruction on mitigation of damages was based upon evidence of record, the trial court did not err in charging the jury thereon. *Southern Bell*, supra, 198 Ga. App. at 518.

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED JUNE 17, 2009 —
RECONSIDERATION DENIED JULY 14, 2009

*Warshauer, Poe & Thornton, James M. Poe*, for appellants.
*Gray, King, Chamberlin & Martineau, William E. Gray II*, for appellee.