A96A1600. HOWARD v. MILLER et al.
(476 SE2d 636)

BIRDSONG, Presiding Judge.

Dr. D. Robert Howard filed suit against William G. Miller, Jr., other officials of the State Board of Medical Examiners, other state employees including assistant attorneys general, and a private physician, Dr. Talbott, for damages arising out of the suspension of his license to practice medicine and his authorization to prescribe controlled substances.

As we view the pleadings and evidence in favor of Dr. Howard on defendants' motions to dismiss (*Hartsfield v. Union City Chrysler-Plymouth*, 218 Ga. App. 873, 874 (463 SE2d 713)), the evidence shows that on May 11, 1993, while Howard was at his home, a state investigator called and asked to meet at Howard's office. When Howard arrived, four state investigators served him with an order issued by the medical board and signed by defendant Miller, who was Joint Secretary of the State Examining Boards. The order suspended Howard's authority to prescribe controlled substances. This was the first

notice Howard received of any such planned action, but he later learned that six months earlier some defendants had voted to take this action. The investigators imposed upon him to surrender his DEA registration. He was also served with notice of the commencement of formal charges alleging he improperly prescribed controlled substances to thirteen patients, but the most recent incident was seven months earlier, which negated any emergency requiring defendants' summary actions on May 11, 1993. On May 12, a defendant board member told Howard to undergo a 96-hour inpatient evaluation, which Howard did immediately. This evaluation, performed by defendant Talbott, an addictionologist, resulted in no findings negative to Dr. Howard, but on May 13 before the evaluation was performed, some defendants voted to suspend Howard's license to practice medicine on grounds that he was "impaired" because of addiction, under OCGA § 43-1-19 (a) (10). Despite Talbott's fruitless findings, the defendants suspended Howard's right to practice medicine in Georgia by order of May 17, 1993, without a hearing or notice of charges of impairment, thus completely destroying his livelihood.

In fact, defendants brought no formal charges and set no date for a hearing until after Dr. Howard filed suit in federal court under 42 USC § 1983 against most defendants sued in this case. On August 10, 1993, Fulton County Superior Court reinstated Howard's license to practice medicine, but he still could not practice medicine because he did not have a DEA registration.

On August 16, 1993, a hearing officer dismissed the original charges against Howard for prosecutorial misconduct by the attorney general's office and for the lack of expert testimony by the State. On that same day, however, with the damage suit pending against him in federal court, defendant Miller commenced a second proceeding alleging Howard to be "impaired." Miller assigned this proceeding to a hearing officer who was hired by Miller because (as alleged by Howard) he was related to a politician for whom Miller worked before becoming Joint Secretary of the State Examining Boards. In November 1993, on advice of the attorney general's office, the board reversed the first hearing officer's dismissal of the proceedings and reinstated the original charges, but because defendants were unable to get an expert witness to testify that Dr. Howard improperly prescribed controlled substances. However, the board never again scheduled any hearing on the reinstated charges. Counsel for the medical board offered to settle all charges against Howard upon entry of a consent order. Dr. Howard agreed to this because as a result of defendants' actions he had lost his jobs and could not financially afford to litigate the board's charges. The consent order reinstated his medical license and DEA authorization on his agreement to com-

plete a course in prescribing controlled substances and, for a period of five years, submit to review of his records, refrain from consuming mood-altering substances except as approved by the board, submit to random invasive physical tests, give a copy of the consent order to any physician or assistant with whom he associated and to any institution with which he became associated. This consent order provides that it "shall not be construed as an admission on the part of respondent of the truth of any of the facts stated in the notices of hearing."

The consent order was executed January 6, 1994, two days after the federal court dismissed Howard's suit on grounds of immunity. (By amendment in April 1994, the federal court limited this disposition to the federal claims, preserving any state claims. This state court suit was filed on May 8, 1995.)

In January 1996, the trial court dismissed Dr. Howard's suit against all defendants, ruling that Howard failed to file the ante litem notice required by OCGA § 50-21-26 (a) (1) and that the Tort Claims Act (OCGA § 50-21-24) provides immunity for state defendants sued in official capacities and bars any claim against a state employee in his individual capacity. Further, the trial court held that the consent order entered by Dr. Howard in January 1994 settled all matters pending before the board and by consenting thereto Howard "waived his right to complain of any injuries resulting therefrom." As to defendant Talbott, the trial court held that Howard failed to state a claim of conspiracy, particularly as Talbott never actually testified against Howard. Howard appeals. *Held*:

1. The arguments on appeal are confused because much of the argument addresses Howard's insistence that he sued defendants as individuals and that therefore the State Tort Claims Act giving immunity to state employees does not apply to his suit. The defendants add to the confusion by insisting they were sued as state employees and by arguing their immunity is based on old federal cases, while fairly ignoring our State Tort Claims Act and such cases as *Gilbert v. Richardson*, 264 Ga. 744 (452 SE2d 476).

(a) The State Constitution provides: "Except as *specifically provided* by the General Assembly in a State Tort Claims Act, all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages *caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions.*" (Emphasis supplied.) Ga. Const., Art. I, Sec. II, Par. IX (d), as amended.

The State Tort Claims Act waives its sovereign immunity "for the torts of state officers and employees while acting within the scope of their official duties or employment and shall be liable for such

torts in the same manner as a private individual or entity would be liable under like circumstances; provided, however, that the state's sovereign immunity is waived subject to all exceptions and limitations set forth in this article." OCGA § 50-21-23 (a).

This express waiver of immunity for torts of state officers and employees is made in recognition of the "inherently unfair and inequitable results which occur in the strict application of the traditional doctrine of sovereign immunity." OCGA § 50-21-21 (a). One exception to the waiver is stated in OCGA § 50-21-24 (9): "The state shall have no liability for losses resulting from: . . . (9) [l]icensing powers or functions, including . . . the issuance, denial, suspension or revocation of [a license or] similar authorization." Dr. Howard could not file suit against the State for any act of its employees.

(b) Dr. Howard could not file suit against the State because he failed to send ante litem notice to the State within 12 months of the date his loss was discovered or should have been discovered, as required by OCGA § 50-21-26. Ante litem notice is a condition precedent to the filing of any suit for which the law requires it. See *City of Chamblee v. Maxwell*, 264 Ga. 635, 636 (452 SE2d 488).

(c) It may be surmised that Howard's failure to serve ante litem notice is the reason he did not name any defendant as a state employee or official and is the reason he contends he sued them all individually. Whatever the case, Howard could not sue state employees individually. The legislature specifically recognized "that the proper functioning of state government requires that state officers and employees *be free to act* and to make decisions, in good faith, *without fear of thereby exposing themselves to lawsuits and without fear of the loss of their personal assets*." (Emphasis supplied.) OCGA § 50-21-21 (b). Moreover, OCGA § 50-21-25 (a) provides: "[The State Tort Claims Act] constitutes *the exclusive remedy for any tort committed by a state officer or employee*. A state officer or employee who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefor." (Emphasis supplied.) Furthermore, OCGA § 50-21-25 (b) provides that a person suing the State for damages resulting from the acts of a state employee acting in the scope of his employment "must name as a party defendant only the state government entity for which the state officer or employee was acting and shall not name the state officer or employee individually. In the event that the state officer or employee is individually named for an act or omission for which the state is liable under this article, the state government entity for which the state officer or employee was acting must be substituted as the party defendant."

Accordingly, the State Tort Claims Act provides *individual immunity* for state employees, in keeping with its intent and purpose

stated in OCGA § 50-21-21. State employees are not subject to lawsuit or liability *"arising from* the performance or nonperformance of their official duties or functions"; this allows them to be free to act without fear of losing their personal assets. (Emphasis supplied.) OCGA § 50-21-21 (b). We have no equivalent to 42 USC § 1983, which gives a claim against a state officer individually for certain unconstitutional acts.

Because of the specific immunity given by OCGA §§ 50-21-21 (b) and 50-21-25 to state employees as individuals for liability "arising from the performance or nonperformance of their official duties or functions" (OCGA § 50-21-21), Dr. Howard was required to sue defendants in their official capacities or not at all. Because he did not serve the required ante litem notice, he could not sue them in their official capacities. Accordingly, his claims against them individually were properly dismissed.

2. The dismissal of Howard's claim against Talbott was not error. Howard concedes that consideration of his claims against Talbott depends on an alleged conspiracy with the other defendants. See *U. S. Anchor Mfg. v. Rule Indus.*, 264 Ga. 295, 297 (443 SE2d 833). Even if any diagnosis by Talbott after his evaluation of Dr. Howard was without basis, the fact remains that Talbott never testified against Dr. Howard, and the acts of the "state" defendants complained of by plaintiff were done independently of Talbott.

We affirm the trial court's ruling that Howard had no right to file a damages suit either against the State or against the defendants individually.

*Judgment affirmed. Beasley, C. J., and Blackburn, J., concur.*

DECIDED SEPTEMBER 24, 1996 — 

*Harold D. Corlew, Cynthia L. Montgomery*, for appellant.
*Love & Willingham, Kimberly L. Woodland, John A. Gilleland, Randolph P. Powell, Jr., Rubin, Winter, Rapoport & Hall, Robert G. Rubin, Michelle B. Rapoport*, for appellees.