**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 26, 2014**

# In the Court of Appeals of Georgia

A13A2009.  McCOY  v.  GEORGIA  DEPARTMENT  OF ADMINISTRATIVE SERVICES.

MILLER, Judge.

After obtaining a large judgment in an action against, among others, former employees of the Georgia Department of Human Resources Division of Family and Children Services ("DFCS"), Melinda McCoy filed the instant complaint against the Department of Administrative Services ("Department") to collect the liability limits under a general liability agreement ("Agreement") between the Department and DFCS. The trial court granted the Department's motion to dismiss McCoy's complaint on the ground of sovereign immunity. McCoy appeals, arguing that a waiver of sovereign immunity applies because there is a written contract between the parties. Based on the limited record before us at this early stage in the proceedings,

we conclude that McCoy has standing to enforce the Agreement because she is a judgment creditor of a covered party. We therefore reverse.

We review the trial court's grant of the motion to dismiss on sovereign immunity grounds de novo, bearing in mind that as the party seeking to benefit from the waiver of sovereign immunity, McCoy bears the burden of proof to establish waiver. See *Pelham v. Bd. of Regents of Univ. System of Ga.*, 321 Ga. App. 791 (743 SE2d 469) (2013).[1]

McCoy worked in the Rabun County DFCS office until she was fired in August 2005. In July 2007, McCoy filed a complaint in the Superior Court of Rabun County against several Rabun County DFCS employees, among other defendants, asserting claims for violation of Georgia's RICO Act, malicious prosecution, and intentional infliction of emotional distress for acts committed in the course and scope of their employment. McCoy's claims arose out of an alleged scheme in which DFCS

---

[1] "Because a motion to dismiss on sovereign immunity grounds is based upon the trial court's lack of subject matter jurisdiction, the trial court is entitled to make factual findings necessary to resolve the jurisdictional issue." (Citations omitted.) Id. n.1. When the trial court determines the jurisdictional issue based upon conflicting facts, we review the trial court's determination under the any evidence rule. Id. Here, the trial court did not review evidence or make factual findings, and as such, we assume the truth of the allegations in McCoy's complaint for purposes of this appeal. See *Bd. of Regents of Univ. System of Ga. v. Brooks*, 324 Ga. App. 15, 16 n.2 (749 SE2d 23) (2013).

employees requested or required unnecessary or unwarranted drug testing on false pretenses and/or in violation of DFCS policy in order to inflate the profits of a private company that contracted to provide drug testing services for DFCS and was owned by the mother of one of the DFCS employees. The Rabun County complaint alleged that after McCoy voiced her concerns about the scheme, some of the defendants fabricated charges and altered case notes to support a false allegation that McCoy committed the offense of reckless conduct in the handling of one of her cases, resulting in a warrant for McCoy's arrest and termination of her employment.

McCoy alleges in her complaint in this action that she provided the State with notice of the Rabun County action, but the State chose not to defend the DFCS employees named as defendants in that suit. Her complaint further alleges that on April 7, 2009, a jury awarded her $3,729,340.35 in actual damages, $100,000 in attorney fees, and $32,000,000 in punitive damages in the Rabun County action. The superior court subsequently entered a judgment against the defendants for $35,829,340.35.[2]

---

[2] The Department asserts in its brief that only two former DFCS employees were named as defendants in the Rabun County complaint and that one of them was was dismissed from the action. The Department further asserts that the jury awarded damages after a default judgment was entered against the remaining defendants on the RICO and malicious prosecution claims. As stated above, we assume the truth of

Thereafter, McCoy sent a letter to the Department requesting the $3,000,000 limit of liability under the Agreement. After receiving McCoy's letter requesting payment, the Department rejected McCoy's demand for the limits. McCoy then filed her complaint against the Department, asserting that the Department breached its contractual duties to defend and to contribute to the judgment against Covered Parties under the Agreement.

The record shows that the Department, as administrator of the State Employee Liability Trust Fund, maintained the Agreement with DFCS for the period from July 1, 2003 through June 30, 2004 The Agreement provides liability coverage to DFCS, the "Named Covered Party," and other "Covered Parties," including "[p]ersons employed by participating State 'departments' in their individual capacity at the time of an 'occurrence' covered by the terms of this Agreement."

The Agreement states that the Department will pay amounts that a "Covered Party becomes legally obligated to pay as 'damages' because of . . . 'personal injury' to which this coverage applies" and states that "[t]his Agreement applies to . . .

---

McCoy's allegations for purposes of this appeal, and in any event, the Department does not dispute the amount of the judgment or that it was entered against at least one former DFCS employee.

4

'personal injury' only if the 'occurrence' is committed or allegedly committed (1) by a Covered Party while acting in the course and scope of their duties with a participating 'department' that has purchased coverage as stated in the Declarations Page." "Personal injury" under the Agreement encompasses injury arising out of malicious prosecution and wrongful acts "committed by any Covered Party in the exercise of the Covered Party's duties as authorized by law, or any matter claimed against any Covered Party solely by reason of the Covered Party serving in such capacity." The Agreement includes a no assignment provision, which also states: "There are no third-party beneficiaries of this Agreement."

McCoy argues on appeal that the trial court erred in concluding that sovereign immunity bars her breach of contract action. We conclude that because McCoy alleges that she holds an unsatisfied judgment against Covered Parties entitled to coverage under the Agreement, McCoy has standing to bring an action for breach of the Agreement.

Article I, Section II, Paragraph IX of the Georgia Constitution states:

Except as specifically provided in this Paragraph, sovereign immunity extends to the state and all of its departments and agencies. The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically

provides that sovereign immunity is thereby waived and the extent of such waiver.

Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e). The same paragraph establishes an exception to the defense of sovereign immunity as "to any action ex contractu for the breach of any written contract now existing or hereafter entered into by the state or its departments and agencies." Ga. Const. of 1983, Art. I, Sec. II, Par. IX (c). See also OCGA § 50-21-1 (a).

It is undisputed that McCoy seeks to enforce a written contract, the Agreement, which the Department and DFCS maintained pursuant to OCGA §§ 45-9-1 (a) and 45-9-4 (a). OCGA § 45-9-1 (a) authorizes DFCS to procure or provide liability insurance "insuring or indemnifying [its employees] to the extent that they are not immune from liability against personal liability for damages arising out of the performance of their duties or in any way connected therewith."[3] OCGA § 45-9-4 (a)

---

[3] State employees are protected by official immunity pursuant to Article I, Section II, Paragraph IX (d) of the state constitution, which sets forth the limited circumstances in which state employees may be subject to suit or liability as follows:

Except as specifically provided by the General Assembly in a State Tort Claims Act, all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause

6

authorizes the Commissioner of Administrative Services to establish a self-insurance program to provide the desired coverage. The issue in contention is whether McCoy is a party to that Agreement or otherwise has standing to bring an action for its breach.

(a) McCoy maintains that she is a party to the Agreement and "should be afforded all the protections thereof" because she qualifies as a Covered Party. The Agreement is signed by the Commissioner of Administrative Services and reflects that DFCS is the Named Covered Party. As such, the Agreement constitutes a contract between the Department and DFCS, and McCoy is not a party to the Agreement.

While McCoy would qualify as a Covered Party to the extent she was employed by DFCS at the time of an occurrence covered under the Agreement, such status makes her at best a potential third party beneficiary of the Agreement. See *Cotton States Mut. Ins. Co. v. Starnes*, 260 Ga. 235, 237 (392 SE2d 3) (1990) (characterizing an "additional insured" under automobile liability insurance policy as a third party beneficiary); *Ericson v. Hill*, 109 Ga. App. 759, 761 (1) (137 SE2d 374) (1964) (describing insured other than named insured under automobile liability

injury in the performance of their official functions. Ga. Const. of 1983, Art. I, Sec. II, Par. IX (d).

7

insurance policy as third party beneficiary). As such, were McCoy named as a defendant in a lawsuit arising out of a covered occurrence, she would have the right to coverage and a defense under the Agreement and standing to enforce her rights.[4] However, "[t]he rights of a third person to sue on a contract made for his benefit depend on the terms of the agreement and are no greater than those granted by the contract as intended by the parties thereto." (Footnote and punctuation omitted.) *American Water Service USA v. McRae*, 286 Ga. App. 762, 763 (650 SE2d 304) (2007). Here, McCoy is not seeking to enforce her rights to coverage, and we find no provision in the Agreement that would allow McCoy, because of her status as a potential Covered Party, to enforce the alleged coverage rights of her former co-employees with regard to the claims she has asserted.

(b) McCoy also contends she is a third party beneficiary with standing to bring the instant breach of contract claim in her separate capacity as a party injured by the conduct of a Covered Party. McCoy acknowledges, however, that we can reach this

_____

[4] See, e.g., *Grange Mut. Cas. Co. v. Snipes*, 298 Ga. App. 405, 408-409 (2) (680 SE2d 438) (2009) (additional insured and its employee who filed third party complaint against insurer were entitled to summary judgment on issue of entitlement to coverage and defense under commercial general liability policy); *Southern Gen. Ins. Co. v. Boerste*, 195 Ga. App. 665 (394 SE2d 566) (1990) (estate of insured entitled to summary judgment in declaratory judgment action seeking declaration regarding right to defense and coverage under aviation liability policy).

8

conclusion only by making an exception to "the general rule in Georgia that liability claimants are not regarded as third-party beneficiaries of liability [insurance] policies." *Googe v. Florida Intl. Indem. Co.*, 262 Ga. 546, 548 (1) (422 SE2d 552) (1992). We do not agree.

"In order for a third party to have standing to enforce a contract, it must appear clearly from the contract that it was intended for the benefit of the third party. The mere fact that the third party would benefit from performance of the agreement is not alone sufficient." (Citation and punctuation omitted.) *Monroe v. Bd. of Regents of Univ. System of Ga.*, 268 Ga. App. 659, 665 (4) (602 SE2d 219) (2004). McCoy contends that the Agreement is intended not only to protect DFCS employees but also citizens harmed by employees' wrongful conduct. However, she fails to cite any provision of the Agreement supporting her position. In fact, the Agreement states that there are no third party beneficiaries.[5] Further, OCGA § 45-9-1 (a) indicates that insurance coverage contemplated by the statute is intended as a benefit for employees in addition to other compensation they receive and makes no reference to

[5] The Department has not argued that this clause limits the rights of employees who are Covered Parties under the Agreement. Rather, it asserts in its brief that "the purpose of [the Agreement] is to protect defendant employees who were sued while performing their duties."

9

compensation of injured third parties. Accordingly, we find no basis to conclude that McCoy is a third party beneficiary under the Agreement based solely on her status as a third party injured by an alleged Covered Party.

(c) Finally, McCoy maintains that because she is a judgment creditor of an alleged Covered Party, she may assert a claim against the Department under the Agreement. While we express no opinion regarding the ultimate merits of McCoy's contractual claim, we conclude that her allegation that she is a judgment creditor of a Covered Party entitled to coverage under the Agreement is sufficient to confer standing on McCoy to bring this action.

While "[a]s a general rule, an injured party has no standing to file a direct suit against the insurer of the party alleged to have caused the injury," an exception exists when the injured party holds an unsatisfied judgment against the insured. *Capitol Indem. Corp. v. Fraley*, 266 Ga. App. 561, 563 (1) (597 SE2d 601) (2004); *Richards v. State Farm Mut. Automobile Ins. Co.*, 252 Ga. App. 45 (555 SE2d 506) (2001). "[W]here an injured party obtains an unsatisfied judgment against a party who has insurance covering the injuries – so that the judgment fixes the liability of the insured party to the injured party – the injured party may bring an action directly against the insurer to satisfy the judgment from the available insurance proceeds." (Citations

omitted.) *State Farm Fire and Cas. Co. v. Bauman*, 313 Ga. App. 771 (723 SE2d 1) (2012). Once a judgment has been obtained, the injured party is no longer a stranger to the insurance policy but instead "stands in the shoes" of the insured. (Citation omitted.) *H.Y. Akers & Sons, Inc. v. St. Louis Fire & Marine Ins. Co.*, 120 Ga. App. 800, 804 (2) (172 SE2d 355) (1969). Consequently, a judgment creditor "derives his rights under the policy through the insured, and he is entitled to recover under the policy only if it appears that all conditions precedent have been complied with." (Citation and punctuation omitted.) *Hathaway Dev. Co., Inc. v. American Empire Surplus Lines Ins. Co.*, 301 Ga. App. 65, 67 (1) (a) (686 SE2d 855) (2009); *Commercial Union Ins. Co. v. Bradley Co.*, 186 Ga. App. 610, 613 (2) (367 SE2d 820) (1988).

We express no opinion regarding the scope of the rights, if any, McCoy may derive through a Covered Party under the circumstances of this case. In its motion to dismiss, for example, the Department stated that its motion was based on the ground of sovereign immunity only and that it was not conceding other possible defenses, such as lack of coverage for the state employee or failure to fulfill statutory or contractual requirements. Moreover, OCGA § 45-9-1 (a) applies to the extent a covered employee is not "immune from liability against personal liability," and there

11

has been no determination of this issue. We conclude, however, that the trial court erred in granting the Department's motion to dismiss because McCoy's complaint sufficiently establishes her standing to sue under the Agreement.

*Judgment reversed. Barnes, P. J., and Ray, J., concur.*