**WHOLE COURT**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 16, 2017**

# In the Court of Appeals of Georgia

A16A2175. GEORGIA DEPARTMENT OF ADMINISTRATIVE
SERVICES v. McCOY.

BRANCH, Judge.

This insurance coverage action concerns whether the Department of Administrative Services ("DOAS"), as the administrator of the State Employee Liability Trust Fund, is liable under its General Liability Agreement (the "GLA") for actions taken by a covered person outside the scope of employment. Because the trial court erred in concluding that the GLA was ambiguous with regard to such coverage, we reverse the trial court's decision to deny DOAS's motion for summary judgment and to enter judgment in favor of McCoy.

The facts necessary to the current appeal are not in dispute; more detailed facts are set forth in an earlier appeal in the same action. See *McCoy v. Ga. Dept. of Admin.*

*Svcs.*, 326 Ga. App. 853 (755 SE2d 362) (2014). In the underlying suit, McCoy alleged that in retaliation for questioning the defendants' illegal scheme to misuse their employment at the Rabun County office of the Department of Family and Children Services ("DFCS") for personal financial gain, McCoy, who was also a DFCS employee, was arrested and later fired based on falsified evidence and fabricated charges that she committed reckless conduct in the handling of her own cases. Id. In response, McCoy filed suit against two DFCS employees, including Nicole Allen,[1] as well as other defendants, asserting three claims: (1) violation of Georgia's RICO Act – based on predicate acts of forgery, perjury, computer forgery, theft by deception, and tampering with evidence; (2) malicious prosecution; and (3) intentional infliction of emotional distress. McCoy also sought punitive damages. McCoy did not provide ante litem notice to the State or name the State or DFCS as a party defendant.

After filing suit, McCoy sent a letter and a copy of the complaint to DOAS giving notice that a suit had been filed against two individuals who had been employed by DFCS for acts that occurred "during the time they were employed by

---

[1] The only other DFCS employee named as a defendant was dismissed during the underlying action.

2

[DFCS],” and requesting information about insurance coverage that “could conceivably apply.” On April 7, 2009, following a default judgment against several defendants, including Allen, a jury awarded McCoy $1,243,113.45, trebled under the RICO statutes for a total of $3,729,340.35 in actual damages; $100,000 in attorney fees; and $32,000,000 in punitive damages. The superior court entered judgment in those amounts but only on the claims of malicious prosecution and RICO.

McCoy then sent a letter to DOAS requesting the policy limits under the GLA on the ground that DOAS breached its contractual duties to defend and to contribute to the judgment against Allen who, as a DFCS employee, was a covered person under the GLA. *McCoy*, 326 Ga. App. at 854. DOAS refused, and McCoy, with new counsel, filed the present coverage action against DOAS, asserting that DOAS breached its contractual duties to defend and to contribute to the judgment against covered parties under the GLA. McCoy asserted in the coverage complaint that she had brought the underlying action against the defendant DFCS employees based on torts they committed while acting “during and in the course and scope of their employment” at DFCS.

Early in the coverage litigation, the trial court dismissed McCoy’s suit on the ground that a suit against DOAS was barred by sovereign immunity, and McCoy

3

appealed. Id. at 853. On appeal, this Court concluded that although McCoy was not a party or a third-party beneficiary to the GLA, she had standing to enforce the GLA as a judgment creditor of Allen, a covered party, and that McCoy therefore "stands in the shoes" of Allen, the insured, with regard to coverage. Id. at 856-858. Accordingly, this Court reversed the dismissal but made clear that it was not deciding any issues of coverage under the GLA for the underlying claims. Id. at 858. This Court did note, however, that McCoy brought the underlying claims against the DFCS employees "for acts committed in the course and scope of their employment." Id. at 853. McCoy did not move for reconsideration of this finding or appeal to the Supreme Court.

On remand, DOAS moved for summary judgment on the ground that the GLA did not cover the claims against Allen because either Allen was acting within the scope of her employment and therefore was immune from liability or Allen was acting outside the scope of her employment and therefore the GLA provided no coverage. In her response, McCoy argued that the underlying suit was not brought against the State under the Georgia Tort Claims Act ("GTCA"); rather she brought her claims against Allen in her individual capacity for torts committed *outside* the course and scope of employment.

4

The trial court denied DOAS's motion and, finding no remaining issues of fact, entered judgment in favor of McCoy, thereby awarding her the policy limits under the GLA. The court began by finding that the underlying case "was filed against the employees in their individual capacity, as no ante litem notice was sent[2] and no allegation was made that the employees committed the acts complained of in the course and scope of their employment." The court did find, however, that DOAS received sufficient notice of the underlying suit for the purpose of insurance coverage.

The court then held that the GLA was ambiguous regarding whether it provided coverage for McCoy's claim of malicious prosecution, that the ambiguity must be construed in favor of McCoy, and that therefore the GLA covered the claims McCoy made against Allen as a matter of law even though the GLA provides that it does not cover occurrences outside the scope of employment. On the RICO claim, the court held that given that McCoy filed the underlying suit against the DFCS defendants individually, questions of sovereign immunity and official immunity were moot; in other words, the court apparently held that DOAS was liable for the RICO award

[2] See OCGA § 50-21-26 (providing that no action can be commenced against the state under the GTCA unless and until notice in a specified form has been timely presented to the state).

5

against Allen up to the policy limits. Finally, the court awarded post-judgment interest to McCoy from the date of the default judgment in the underlying action. The court then entered judgment against DOAS for the applicable policy limits of $1 million plus post-judgment interest. DOAS appeals these rulings. McCoy has not cross-appealed any aspect of the ruling.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

DOAS contends the trial court erred in finding that the GLA is ambiguous. DOAS argues that the GLA unambiguously provides that there is no coverage for acts outside of the scope of employment and that the GLA therefore provides no coverage for any of McCoy's claims against Allen in the underlying suit. We agree.

(a) The legal background to the issue raised in this action concerns the sovereign immunity of the State and the official immunity of state officials and employees as set forth in the Constitution of the State of Georgia, together with the

6

modification of those immunities under the Georgia Tort Claims Act.[3] The Georgia

Constitution extends sovereign immunity to the State and all of its departments and

agencies, but, except as specifically provided in the GTCA, it allows suits against

state officers and employees for negligent performance of their ministerial functions

and for actions taken with malice or actual intent to injure in the performance of their

official functions[4]; otherwise, state officers and employees have immunity under the

Georgia Constitution for the performance or nonperformance of their official

functions. Ga. Const. Art. I, Sec. II, Par. IX (d). The Georgia Constitution also

provides that the legislature may waive elements of the state's sovereign immunity

by way of the GTCA and provides procedures for claims against "the state and its

departments, agencies, officers, and employees." Id. (a) & (e).

---

[3] "The 1991 amendment [to the Constitution] was passed to extend sovereign immunity to all state departments and agencies, regardless of insurance, and to substitute the insurance waiver provision in previous constitutions with a tort claims waiver." *Miller v. Ga. Ports Auth.*, 266 Ga. 586, 588 (470 SE2d 426) (1996) (footnote omitted).

[4] "An official function is one performed within the officer's or employee's scope of authority, including both ministerial and discretionary acts." *Todd v. Kelly*, 244 Ga. App. 404, 406 (1) (535 SE2d 540) (2000) (footnote omitted); *Gilbert v. Richardson*, 264 Ga. 744, 753 (6) (452 SE2d 476) (1994).

With the passage of the GTCA, the state waived some of its immunity but expanded state officer and employee immunity. Under that Act and subject to certain exceptions and limitations,[5] the State waived its sovereign immunity "for the torts of state officers and employees while acting within the scope of their official duties." OCGA § 50-21-23 (a). Thus, subject to the statutory exceptions, the State has opened itself up to liability for the acts of its officers and employees acting within the scope of their employment even if the officer or employee may have personal immunity from suit under the Constitution. See *Riddle v. Ashe*, 269 Ga. 65, 66 (2) (495 SE2d 287) (1998) ("While a state actor is immune from suit if acting within the scope of his or her official duties, the GTCA does allow recourse against the state for the same conduct, if certain conditions have been satisfied.") (citation omitted).[6] Finally, to assert a claim against a state government entity under the GTCA, the plaintiff must provide ante litem notice to the State. See OCGA § 50-21-26.

---

[5] See OCGA § 50-21-24.

[6] For claims allowed against the State by the GTCA, the tort victim must name as a party defendant the state government entity for which the state officer or employee was acting; the individual may not be named as a defendant "for an act or omission for which the state is liable under [the GTCA]." OCGA § 50-21-25 (b). If the state officer or employee is individually named in such a case, "the state government entity for which the state officer or employee was acting must be substituted as the party defendant." Id.

But under the same circumstances, i.e., for the torts of state officers and employees while acting within the scope of their official duties, the GTCA provides that suits against the state officers and employees are not allowed. OCGA §§ 50-21-23 (a), 50-21-25 (a) ("A state officer or employee who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefor."); see also *Howard v. Miller*, 222 Ga. App. 868, 871-872 (1) (c) (476 SE2d 636) (1996) (GTCA "provides individual immunity for state employees . . . arising from the performance or nonperformance of their official duties or functions) (punctuation and emphasis omitted). As held by the Supreme Court, under the GTCA state officers and employees are exempt from liability "for any torts committed while acting within the scope of their official duties or employment" "without any exception for malicious acts." *Ridley v. Johns*, 274 Ga. 241, 242 (552 SE2d 853) (2001). Thus the GTCA extended immunity for state officers and employees to all actions taken within the scope of their official duties or employment. See id. The GTCA also makes clear, however, that the State has no liability for, and has established no immunity for, state officers or employees engaged in conduct "not within the scope of their official duties or employment." OCGA §§ 50-21-23 (a), 50-21-25 (a).

9

Finally, the GTCA provides that it is "the exclusive remedy for any tort committed by a state officer or employee" within the scope of his or her official duties or employment. OCGA § 50-21-25 (a); see also OCGA §§ 50-21-23 (a).

(b) Against this backdrop, we first hold that the only possible aspect of the default judgment that McCoy obtained against Allen in the underlying matter that is relevant to this coverage case is the degree to which the underlying suit alleged torts that Allen committed outside the scope of her employment.[7] As the trial court suggested in its final order, and as McCoy admitted at oral argument below and in her brief on appeal, the underlying case can only be seen as having been filed against the employees in their individual capacity, as no ante litem notice was sent to the State as required by the GTCA. *Howard*, 222 Ga. App. at 871 (1) (b) (plaintiff cannot file suit against State under GTCA where plaintiff failed to send ante litem notice). Thus

---

[7] This is a somewhat charitable position for this Court to accept. As shown above, in the earlier appeal in this case, this Court accepted McCoy's then position that she brought claims in the underlying suit against the DFCS defendants for their actions within the scope of their employment. And "any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be." Under that posture, McCoy would have no claims pending whatsoever because, as shown above, she failed to provide ante litem notice of her claims under the GTCA, the exclusive remedy for any tort committed by a state officer or employee within the scope of his or her official duties or employment.

10

the default judgment did not establish any liability for the State or Allen for any of Allen's actions taken within the scope of her official duties or employment. Rather, the default judgment could have established liability only for Allen's actions made outside the scope of her employment.

(c) Next, with regard to liability coverage for the acts of state officials or employees made outside the scope of employment, the GLA is not ambiguous: it clearly does not provide such coverage. The "Coverage Agreement" of the GLA provides that the GLA applies "only if the 'occurrence' is committed or allegedly committed . . . by a Covered Party while acting in the course and scope of their duties with a participating department that has purchased coverage. . . ." Similarly, the GLA excludes "[c]laims relating to an 'occurrence' committed or allegedly committed by a Covered Party while outside the course and scope of their duties." These are the only two times the term "scope of employment" is mentioned in the GLE, and the meaning is completely clear: regardless of the type of claim that might otherwise be covered in the GLA, no coverage is offered for claims arising outside the scope of employment.

(d) McCoy argues that the following sentence in the GLA "Coverage Agreement" creates an ambiguity in the meaning of the GLA:

> This Agreement will respond to any covered allegation in order to defend and pay "damages" on behalf of a Covered Party when a claim or "lawsuit" is filed and is not covered by the [GTCA].

We disagree. First, McCoy's claims against Allen cannot be considered "covered allegations" because no allegations arising outside the scope of employment are covered, as shown above. Second, although the meaning of the phrase "not covered by the [GTCA]" may be unclear, this case does not raise the question of whether there are any conceivable claims that are "covered" by the GLA and "not covered by the GTCA]." That question is not before us. Rather, we only hold that the GLA makes clear that the GLA provides no coverage for actions taken outside the scope of employment.

Similarly, the fact that the GLA may be ambiguous as to whether it provides coverage for malicious prosecution arising out of actions by state officers and employees *within* the scope of employment (which we need not decide in this case) does not render the GLA ambiguous with regard to coverage for actions by state officers and employees acting outside the scope of employment, which is the only issue before us.

More specifically, the trial court essentially accepted McCoy's argument below that the GLA is ambiguous because although on its face it purports to cover claims for malicious prosecution in that the GLA specifically includes malicious prosecution in the definition of "personal injury,"[8] in actuality "there is no possible scenario whereby the insurance policy would provide coverage for malicious prosecution." As McCoy argued,

> First, an employee could never be held liable for malicious prosecution committed in the course and scope of their employment because actions against an employee acting in the course and scope of their employment are required to be brought under the GTCA. However, the GTCA expressly bars actions for malicious prosecution. Secondly, if an employee committed the tort of malicious prosecution outside the scope of their employment and a Plaintiff brought suit outside of the GTCA, then the insurance policy would never apply because the policy states that it provides coverage only for acts committed while in the course and scope of employment.

As shown by McCoy's own argument, there is no ambiguity in the GLA regarding coverage for a claim of malicious prosecution arising outside the scope of

___

[8] We not that although the policy defines "personal injury" to include malicious prosecution, the Coverage Agreement states that it will pay only damages resulting from personal injury "to which this coverage applies."

13

employment because no claims arising outside the scope are covered by the GLA. Rather, in her attempt to create an ambiguity in the GLA, McCoy relies on an exclusion from the State's waiver of liability under the GTCA for claims of malicious prosecution, see OCGA § 50-21-24 (7), which can only come into play for claims falling under the GTCA, i.e., claims arising out of actions by state officers or employees made in the scope of employment. But, as already shown, the only claims at issue in the present appeal concern Nicole Allen's conduct outside the scope of employment. Just because the GLA may raise questions about coverage under the GTCA for claims within the scope of employment, which are not relevant to this case, does not mean that the GLA must be construed to cover claims outside the scope of employment. *King-Morrow v. American Family Ins. Co.*, 334 Ga. App. 802, 803 (780 SE2d 451) (2015) (court must determine whether the relevant policy language is ambiguous).

For the above reasons, we conclude that the GLA does not cover any of McCoy's surviving claims against Allen in the underlying suit. It follows that DOAS did not breach any obligation in the GLA to defend or to indemnify Allen for those claims. The trial court therefore erred in denying DOAS's motion for summary judgment and erred in granting summary judgment in favor of McCoy. Those rulings

14

are hereby reversed, and the case is remanded for entry of summary judgment in favor of DOAS on all claims.

*Judgment reversed and case remanded with direction. Doyle, C. J., Dillard, P. J., Andrews, Ray, Mercier, and Bethel, JJ., concur. Ellington, P. J., and Reese, J., dissent.*

A16A2175.  GEORGIA DEPARTMENT OF ADMINISTRATIVE

SERVICES v. MCCOY.

ELLINGTON, Presiding Judge, dissenting.

I respectfully dissent because I agree with the trial court that the General Liability Agreement ("GLA") is ambiguous.

Judgment was entered in the underlying lawsuit in favor of Melinda McCoy on her claims of malicious prosecution and violation of the RICO statutes. I agree with the majority that the underlying judgment against the state employee defendant, Nicole Allen, could have established liability only for her actions made outside the scope of her employment. Accordingly, the pertinent issue is whether the GLA nevertheless provides coverage for those actions.

An insurance policy, considered as a whole, that is subject to two reasonable interpretations, one providing for coverage and one excluding coverage, is ambiguous, and the ambiguity must be strictly construed against the insurer as the drafter of the document. *American Strategic Insurance Corp. v. Helm*, 327 Ga. App. 482, 485-487 (759 SE2d 563) (2014).  Under the GLA, the Department of Administrative Services ("DOAS") will pay those sums that a covered party becomes

legally obligated to pay as damages because of "personal injury." In turn, "personal injury" is defined to include personal injury arising out of an occurrence of "[f]alse arrest, detention or imprisonment, abuse of process or malicious prosecution." Further, the GLA provides that "[t]his Agreement will respond to any covered allegation in order to defend and pay 'damages' on behalf of a Covered Party when a claim or 'lawsuit' is filed and is not covered by the Georgia Tort Claims Act [the "GTCA"]." No coverage is provided under the GLA for claims "filed in any court of the State of Georgia that are covered by the [GTCA]."

Under the GTCA, a state employee "who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefor." OCGA § 50-21-25 (a). Rather, the GTCA "constitutes the exclusive remedy for any tort committed by a state officer or employee." Id. Further, the GTCA provides that the state shall have no liability for malicious prosecution. OCGA § 50-21-24 (7). Thus, if a state employee commits the tort of malicious prosecution, any lawsuit or recovery by the injured party arising from that tort must be founded on acts outside the scope of the state employee's official duties or employment.

2

The GLA, on the one hand, contemplates coverage for a Covered Party "acting in the course and scope of their duties with a participating department,"[1] while simultaneously contemplating that it will provide coverage for the tort of malicious prosecution. But the GLA's "course and scope" requirement negates any possible coverage for a claim of malicious prosecution. I find persuasive the observation of the trial court that "[i]f the GLA was meant to only cover torts committed in the course and scope of employment, then there would be no need for the policy to exist at all, since the GTCA would control. Nevertheless, the DOAS included malicious prosecution in the policy and thus, it clearly meant for malicious prosecution to be a covered tort."

"[I]f there are conflicting or repugnant clauses in an insurance policy, the court will construe them in favor of the insured, so as to prevent a forfeiture." (Citation and punctuation excluded.) *Davis v. United Am. Life Ins. Co.*, 215 Ga. 521, 527 (111 SE2d 488) (1959). As the GLA's provisions are conflicting and repugnant insofar as they contemplate coverage for a claim of malicious prosecution as well as require that an occurrence be committed or allegedly committed in the "course and scope" of

---

[1] The GLA also excludes "[c]laims relating to an 'occurrence' committed or allegedly committed by a Covered Party while outside the course and scope of their duties with a participating 'department.'"

3

a covered party's duties with a participating agency, the GLA is ambiguous. In order to effect the expressed intent of the GLA to provide coverage for the tort of malicious prosecution, the clause allowing for such coverage must be adopted to the exclusion of the conflicting provisions of the GLA. See *Davis v. United Am. Life Ins. Co.*, 215 Ga. at 528.

Further, I disagree with DOAS's contention that Georgia law precludes coverage under the GLA for acts committed outside the scope of employment. OCGA §§ 45-9-1 (a) and 45-9-4 (a) allow DOAS to maintain a liability agreement insuring or indemnifying state employees "against personal liability for damages *arising out of the performance of their duties or in any way connected therewith*[.]" (Emphasis supplied.). The statutory language authorizes the provision of insurance to state employees that is fundamentally broader than the "course and scope" language which DOAS included in the GLA and does not require that the GLA be interpreted to deny coverage here. Indeed, McCoy's malicious prosecution claim in the underlying lawsuit was at least "connected" with Allen's employment with the Rabun County office of the Georgia Division of Family & Children's Services.

Lastly, I find without merit DOAS's contention that the state's sovereign immunity precludes it from paying damages on account of a RICO claim under the

GLA. As noted above, the General Assembly authorized DOAS to provide the GLA to insure against the "personal liability" of state employees, and the GLA does not provide coverage for claims covered by the GTCA. The underlying judgment can only be seen as against Allen in her personal capacity, and it established her liability only for actions outside the course and scope of her employment. The GTCA does not preclude claims against state employees outside the scope of their official duties or employment. See OCGA § 50-21-25 (a) ("[N]othing in this article shall be construed to give a state officer or employee immunity from suit and liability if it is proved that the officer's or employee's conduct was not within the scope of his or her official duties or employment."). Our holding in *Tricoli v. Watts*, 336 Ga. App. 837, 840 (4) (336 SE2d 837) (2016) that, where the GTCA is the exclusive remedy, the Georgia RICO act could not be invoked as an alternate remedy or waiver of sovereign immunity for the tortious conduct of state employees, does not apply here.

I would affirm the judgment of the trial court.

I am authorized to state that Judge Reese joins in this opinion.

5