[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16830
Non-Argument Calendar
_____

D.C. Docket No. 2:14-cv-00042-LGW-RSB

LEE ANDREW JACKSON,

Plaintiff-Appellant,

versus

TRAVIS SMITH,

Defendant,

GLYNN COUNTY GEORGIA,
WAYNE BENNETT,
SHAWN DAVIES,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(March 31, 2017)

Before WILLIAM PRYOR, JULIE CARNES and JILL PRYOR, Circuit Judges.

PER CURIAM:

Lee Andrew Jackson appeals the summary judgment in favor of Glynn County, Sheriff Wayne Bennett, and Officer Shawn Davies and against Jackson's complaint about the violation of his constitutional rights, *see* 42 U.S.C. § 1983, the Americans With Disabilities Act, *see id.* § 12132, and Georgia law. We affirm.

## I. BACKGROUND

On a Friday night, an officer arrested Jackson for driving while intoxicated and transported him to the Glynn County Detention Center. Jackson, who had been paralyzed several years earlier, was allowed to remain in his wheelchair "overnight" until officials could begin the intake process. That process required, in part, that Jackson take a shower.

Around 10:30 the next morning, Officers Davies and Travis Smith escorted Jackson to the shower designated for incoming detainees. Smith informed Jackson that he would be lifted out of his wheelchair and seated on a chair inside the shower stall, and Jackson agreed to proceed. Davies held Jackson's wheelchair while Smith wrapped his arms around Jackson's torso and began to lift him. After Jackson was hoisted in the air, he stated that his back was hurting. Smith immediately returned Jackson to his wheelchair with Davies's assistance.

2

Smith told a supervisor about Jackson's condition. In the meantime, Jackson's family brought his medication to the jail. At 1:55 p.m., a doctor at the jail examined Jackson and permitted him to take all his medication, including the hydrocodone that he used to treat his chronic back pain. The doctor also cleared Jackson to go to a cell. Later, Jackson went to a second bathroom where he moved from his wheelchair into the shower stall and returned to his wheelchair without assistance.

On Monday, March 26, 2012, jail officials released Jackson. Later, Jackson visited his general practitioner. The physician gave Jackson additional medication and prescribed physical therapy.

Jackson filed a complaint in the district court that the County and the officers, in their official and individual capacities, were liable for the use of excessive force and inflicting unlawful punishment during the intake process and that the County and Bennett were liable for operating a facility in which Jackson could not "fully engage in activities protected by the . . . Disabilities Act." Jackson alleged that Smith and Davies acted with "deliberate indifference" and used "improper techniques" to lift and reseat him in his wheelchair and that Bennett "fail[ed] to provide medical care," to develop "adequate policies for bathing inmates," or to "train[] . . . his subordinate employees . . . [about] bath[ing] inmates who suffer from paraplegia," in violation of Jackson's rights under the "Fourth,

3

Eighth, and Fourteenth Amendments" and Georgia law. Jackson also alleged that the County and Bennett knew that the "shower facilities at the . . . Detention Center [were] dangerous" and "[in]adequate for persons confined to wheel chairs to safely bath[e] and shower," in violation of the Disabilities Act.

The County and the officers moved for summary judgment. Jackson filed an affidavit stating that Davies and Smith were responsible for his back injury. The district court struck Jackson's affidavit because it described "the event causing his injury" in a manner "inherent[ly] inconsisten[t]" with the allegations of his complaint and his deposition testimony.

The district court entered summary judgment in favor of the County and the officers. The district court ruled that Glynn County was not liable for Jackson's injury or for the alleged violation of the Disabilities Act because Georgia law provided that "counties do not wield any control over the Sheriff's Office." And the Eleventh Amendment, the district court ruled, barred the complaint against Bennett and Davies in their official capacities and Jackson's complaint that Bennett had violated the Disability Act. The district court also ruled that Bennett and Davies enjoyed qualified immunity for the alleged violations of Jackson's constitutional rights; that Georgia law provided no cause of action against the officers; and that the officers were entitled to official immunity from suit for their alleged negligence.

4

## II. STANDARDS OF REVIEW

This appeal requires that we apply two standards of review. The "decision to strike an affidavit as a 'sham' is reviewed for abuse of discretion." *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1306 (11th Cir. 2016). We review *de novo* a summary judgment and view the evidence in the light most favorable to Jackson. *Singletary v. Vargas*, 804 F.3d 1174, 1180 (11th Cir. 2015).

## III. DISCUSSION

Jackson challenges almost every aspect of the judgment. He argues that his affidavit was "[in]correctly struck" and that the County and the officers should be held accountable for their unlawful conduct. Jackson's arguments fail.

The decision to strike Jackson's affidavit was not an abuse of discretion. We "allow[] a [district] court to disregard an affidavit as a matter of law when, without explanation, it flatly contradicts . . . prior deposition testimony for the transparent purpose of creating a genuine issue of fact where none existed previously." *Furcron*, 843 F.3d at 1306. Jackson averred that "Travis Smith and Shawn Davies maneuvered [him] into the shower"; both officers "participated in the procedure" of "physically lifting [Jackson] out of [his] wheelchair"; and "[s]ome of [the] injury . . . happened while [Jackson] was being lifted and some occurred while [he] was being put back into [his] wheelchair." Those statements conflict with the allegations in Jackson's complaint that "Smith . . . lifted [Jackson] from the wheel

5

chair" and, "in the act of lifting, . . . [Jackson] suffered severe injuries to his back and spine." Jackson's affidavit also contradicts his testimony that Smith lifted Jackson while Davies "h[eld] [Jackson's] wheelchair"; that "[w]hen [Smith] first picked [Jackson] up . . . and when [his] bottom left the chair[ was] when [his back] started popping and cracking"; and that the injury "had been done" before he was returned to his wheelchair by Smith and Davies. Jackson argues, for the first time on appeal, that he was unable to correct inaccuracies in the transcript of his deposition and that his "deposition testimony as a whole" does not contradict his affidavit, but we decline to consider arguments that Jackson failed to present to the district court. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004). The district court committed no abuse of discretion when it found that Jackson submitted his affidavit for the improper purpose of "creat[ing] a material issue of fact where there previously was none" about who caused his injury.

The district court correctly entered summary judgment in favor of Glynn County. Jackson does not contest the determination that Glynn County was not "liable for Bennett and Davies' action with regard to [his] injury" under section 1983, so we deem abandoned any challenge that he could have raised to that adverse ruling. *See Ziegler v. Martin Cty. Sch. Dist.*, 831 F.3d 1309, 1326 (11th Cir. 2016). And the district court did not err in deciding that the County could not be held liable for "den[ying] [Jackson] the benefits of . . . services, programs, and

activities," in violation of the Disabilities Act, 42 U.S.C. § 12132. Bennett established the policy of requiring pretrial detainees to shower during the intake process and oversaw the detention center. He performed those duties under the authority granted to him by the State of Georgia, not Glynn County. In Georgia, "[t]he Constitution has made the sheriff independent from the county" and "grants the state legislature the exclusive authority to establish and control a sheriff's powers[ and] duties," *Brown v. Dorsey*, 625 S.E.2d 16, 21 (Ga. Ct. App. 2005); *see Bd. of Comm'rs of Dougherty Cty. v. Saba*, 598 S.E.2d 437, 439 (Ga. 2004), which includes his role as a jailer, Ga. Code § 42-4-1(a). *See Manders v. Lee*, 338 F.3d 1304, 1315 (11th Cir. 2003) (A sheriff's "authority and duty to administer the jail in his jurisdiction flows from the State."); *In re Irvin*, 328 S.E.2d 215, 217 (Ga. 1985) ("It is clear that the legislature has vested broad authority in the office of sheriff to administer the jails."). The sheriff has absolute control over the equipment and resources allotted to him, *Brown*, 625 S.E.2d at 21, and is responsible for "county property . . . placed in [his] keeping," Ga. Code Ann. § 36-9-8. Because Glynn County did not create the procedures for admission to the detention center or control what amenities were available to detainees, it could not be, in the words of the district court, "liable for the conduct that allegedly violated the ADA."

The district court did not err by entering summary judgment against

Jackson's complaint against Bennett in his official capacity for the alleged violations of Jackson's constitutional rights and of his rights under the Disabilities Act. As explained earlier, Bennett derived his authority from the State. The Eleventh Amendment bars suits "against one of the United States," U.S. Const. Amend. XI, and protects the immunity of officials who are functioning as an agent or an "arm of the state," *Manders*, 338 F.3d at 1308. Bennett acted as "an arm of the State in establishing . . . policy at the jail and in training" his officers, *id.* at 1328, and was entitled to immunity from suit. Jackson argues that Bennett is "a County Officer" based on the decision in *Teasley v. Freeman*, 699 S.E.2d 39 (Ga. Ct. App. 2010), that "a sheriff is part of the county as an employer under the [Workers' Compensation] Act," *id.* at 42, but the *Teasley* Court also explained that "a county commission [does not] control[] the sheriff's execution of his duties," *id.* (citing *Brown*). *Teasley* acknowledged that a sheriff acts as an officer of the State when performing his duties as a jailer.

The district court correctly entered summary judgment against Jackson's complaint against Bennett in his individual capacity. Bennett was entitled to qualified immunity unless Jackson proved that Bennett's conduct violated a statutory or constitutional right that was clearly established when the alleged violation occurred. *See Gilmore v. Hodges*, 738 F.3d 266, 272 (11th Cir. 2013). Jackson alleged that Bennett failed to provide medical care, which might have

subjected Bennett to liability had his conduct amounted to deliberate indifference to a serious medical need. *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994). But Jackson produced no evidence that Bennett knew about Jackson's injury. Jackson argues that "[t]he jail doctor did not treat him," but the undisputed evidence established that a prison physician examined Jackson within three and a half hours of his injury and allowed him to take medicine, including hydrocodone that he used to treat his chronic back pain. Jackson also alleged that Bennett was responsible for the allegedly unlawful force used by and punishment inflicted by his officers, but Jackson failed to identify any evidence that would establish the causal connection required to impose supervisory liability on Bennett. *See Braddy v. Fla. Dep't of Labor & Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 1998). Jackson failed to produce any evidence that Bennett knew about "widespread abuse[s]" by his officers that necessitated enacting policies and training his officers about bathing paraplegic detainees. Bennett's conduct "was not constitutionally inadequate for purposes of qualified immunity." *Id.*

The district court also did not err by entering summary judgment in favor of Davies based on qualified immunity. Jackson failed to present any evidence that Davies violated federal law. *See Gilmore*, 738 F.3d at 272. Jackson does not dispute that "a reasonable jury. . . could not find that Davies either utilized excessive force or subjected [Jackson] to cruel and unusual punishment" because

the facts made "clear that Davies was not touching [Jackson] when the injury occurred and that [Davies] acted to aid [Jackson]." Jackson also does not dispute that the Eleventh Amendment barred his complaint against Davies in his official capacity.

The district court also correctly entered summary judgment against Jackson's complaint that the officers violated Georgia law. Jackson argues that Bennett is liable for the wrongdoing of his officers, but Georgia provides immunity to state employees as individuals "arising from the performance or nonperformance of their official duties or functions," Ga. Code Ann. § 50-21-21(b). *See Howard v. Miller*, 476 S.E.2d 636, 639 (Ga. Ct. App. 1996) (Georgia "ha[s] no equivalent to 42 U.S.C. § 1983, which gives a claim against a state officer individually for certain unconstitutional acts."). And Jackson does not dispute that his "claim[] against Davies . . . in [his] individual capacit[y] fail[s] as a matter of law."

## IV. CONCLUSION

We **AFFIRM** the summary judgment in favor of Glynn County, Sheriff Bennett, and Officer Davies.