S08G1031. BRAGG et al. v. OXFORD CONSTRUCTION COMPANY.
(674 SE2d 268)

MELTON, Justice.

Following a serious car accident, Ken and Francesca Bragg, individually and co-administrators of the estate of their stillborn daughter, sued Oxford Construction Company for negligent con-

struction of the road where the accident took place. The trial court granted summary judgment to Oxford based on Georgia's "acceptance doctrine,"[1] and the Court of Appeals affirmed. *Bragg v. Oxford Constr. Co.*, 289 Ga. App. 638 (658 SE2d 198) (2008). We granted certiorari in this case to determine whether the acceptance doctrine should remain viable in Georgia. As explained more fully below, because it makes perfect sense to apply the acceptance doctrine to the facts of this case, and because the dissent's proposed change to this longstanding Georgia law is unwarranted, we affirm the judgment of the Court of Appeals.

The record reveals that Dougherty County contracted with Oxford to repave and overlay asphalt patches on a road that was owned and maintained by the County. An engineer who was employed by the County and who directed Oxford's work ordered Oxford to place a "spot overlay patch" on the area of the road where the Braggs' car accident later took place. Oxford followed the specific instructions given to it in performing its work and performed its work to the satisfaction of the County. It is undisputed that Oxford was not responsible for the design of the road, nor did it hold itself out as an expert on such design. Oxford just did what it was instructed to do by the County, and the County accepted Oxford's work when the work was completed. Oxford even observed a problem with the finished product and sought permission to attempt to remedy it, which was denied. Because Oxford performed the requested work according to the specifications given to it by the County, and because there is no evidence that Oxford performed the assigned work in a negligent manner, it cannot be held liable for injuries resulting from its employer's allegedly defective design of the work. *David Allen Co.*, supra, 260 Ga. at 558. Under such circumstances, liability, if any, should rest with the entity that hired Oxford, ordered it to patch the road, and accepted Oxford's completed work. See *Flagler Co. v. Savage*, 258 Ga. 335 (1) (368 SE2d 504) (1988) ("if it appears that the contractor has followed the plans and directions of his employer and injury has resulted, the employer, and not the contractor, is to be held liable") (citation and punctua-

---

[1] The acceptance doctrine provides that

where a contractor who does not hold itself out as an expert in the design of work such as that involved in the controversy, performs its work without negligence, and the work is approved and accepted by the owner or the one who contracted for the work on the owner's behalf, the contractor is not liable for injuries resulting from the defective design of the work. The exceptions [to this rule] for inherently or intrinsically dangerous work, for nuisances per se, and for work so negligently defective as to be imminently dangerous to third persons, apply in cases where the contractor is guilty of negligence in the performance of its work.

*David Allen Co. v. Benton*, 260 Ga. 557, 558 (398 SE2d 191) (1990).

tion omitted). If Oxford had somehow been negligent in the performance of the requested work such that its work fell within one of the exceptions to the acceptance doctrine, it could still have been subjected to liability under Georgia law regardless of whether or not the County accepted its work. See *David Allen Co.*, supra, 260 Ga. at 558.[2]

Application of the acceptance doctrine makes sense in this case. In fact, the dissent makes no effort to explain why the facts of this case would dictate that a change to this longstanding law needs to be made. Instead, the dissent takes this case as an opportunity to reject this established principle of law, and to propose the ad hoc invention of a new legal doctrine, merely because the acceptance doctrine itself is implicated in this case. This is exactly the manner in which new law should *not* be created, because it is not the role of this Court to formulate new law in the abstract, as the dissent has proposed here. To the contrary, the law as it exists should be applied to the realities of the case presently before the Court. See, e.g., *Brawner v. Sterdevant*, 9 Ga. 69 (1850). Instead of focusing on the facts of this particular case, however, the dissent would choose to abandon the longstanding Georgia rule here simply because several of "our sister states [have] reject[ed] the acceptance doctrine." The fact that other jurisdictions have rejected the rule, however, does not mandate that Georgia do the same. See generally *Robeson v. Intl. Indem. Co.*, 248 Ga. 306 (282 SE2d 896) (1981). Indeed, "[a]lthough it is true that the doctrine is of common-law origin, it is of long-standing application [in Georgia]; and it is not unrealistic to presume that people have come to rely on it." Id. at 309 (4) (b). As such, where, as here, Georgia's common law acceptance doctrine has not "been changed by express statutory enactment or by necessary implication," it should remain in force. Id. at 307 (1). For this reason, the dissent has provided an insufficient basis for this Court to reject this "common-law [rule] . . . of long-standing application [in Georgia] . . . that people have come to rely on." Id.

Based on the facts of the case currently before the Court, and based on the fact that the Legislature has not changed Georgia's acceptance doctrine expressly or by necessary implication, the acceptance doctrine must be left intact here, and the decision of the Court

---

[2] Where, as here, Oxford did not hold itself out as an expert on the design of the road, it could not be held liable under any other exceptions to the acceptance doctrine unless it performed the requested work in a negligent manner. Thus, to the extent that the Court of Appeals analyzed the other exceptions to the acceptance doctrine after concluding that Oxford had not been negligent, the Court of Appeals committed error. These exceptions to the acceptance doctrine only apply "in cases where the contractor is guilty of negligence in the performance of its work." *David Allen Co.*, supra, 260 Ga. at 558. We therefore disapprove that portion of the Court of Appeals' opinion that incorrectly analyzed the exceptions to the acceptance doctrine.

of Appeals must therefore be affirmed. Any consideration of the continued viability of the acceptance doctrine should take place in the context of a case where the facts actually demonstrate why the doctrine proves to be inadequate. This is not such a case, and the dissent's attempt to create new law here is gratuitous.

*Judgment affirmed. All the Justices concur, except Sears, C. J., Hunstein, P. J., and Benham, J., who dissent.*

HUNSTEIN, Presiding Justice, dissenting.

Because I disagree with the continued adherence to a judicially-created doctrine that is based on principles long since disapproved, I must respectfully dissent.

Georgia adopted the acceptance doctrine in the case of *Young v. Smith & Kelly Co.*, 124 Ga. 475 (52 SE 765) (1905), citing treatises such as *Wharton on Negligence*, § 438, which in turn relied upon the then-leading case of *Winterbottom v. Wright*, 10 M & W 109, 152 Eng. Rep. 402 (1842). *Winterbottom* provided the foundation for "the general rule that the original seller of goods was not liable for damages caused by their defects to anyone except his immediate buyer, or one in privity with him," (footnote omitted) W. Page Keeton, *Prosser and Keeton on The Law of Torts* § 96, p. 681 (5th ed. 1984); this rule was extended to include building contractors as well as sellers of goods. Id. at § 104A, p. 722. However, *Winterbottom* was decided "before clear recognition of negligence as an independent basis of liability and of the distinction between tort and contract," Oscar S. Gray, *The Law of Torts*, Vol. 3, § 18.5, pp. 705-706 (2d ed. 1986), and has since been characterized as "a fishbone in the throat of the law." Keeton, supra at § 96, p. 681.

In the context of a manufacturer of goods, the privity requirement was disapproved in *MacPherson v. Buick Motor Co.*, 111 NE 1050 (N.Y. 1916), an approach that has been universally accepted for over 40 years, Keeton, supra at § 96, pp. 682-683, and incorporated into Georgia law. See OCGA § 51-1-11 (b) (eliminating privity requirement for breach of implied warranty action against manufacturer). Using the analogy of *MacPherson* in cases involving building contractors, our sister states began to reject the acceptance doctrine, see Keeton, supra at § 104A, p. 723, leading to the development of a "modern rule" or "foreseeability doctrine," pursuant to which

> a building or construction contractor is liable for injury or damage to a third person even after completion of the work and its acceptance by the owner where it was reasonably foreseeable that a third person would be injured by such work on account of the contractor's negligence or failure to disclose a dangerous condition known to such contractor.

Emmanuel S. Tipon, Annotation, "Modern Status of Rules Regarding Tort Liability of Building or Construction Contractor for Injury or Damage to Third Person Occurring After Completion and Acceptance of Work; 'Foreseeability' or 'Modern' Rule," 75 ALR5th 413 § 3 (2000). See also Restatement (Second) of Torts § 385 (drawing parallel between contractor liability and manufacturer liability). This rule has been applied "not only to contractors doing original work, but also to those who make repairs, or install parts, as well as supervising architects and engineers." (Footnotes omitted.) Keeton, supra at § 104A, p. 723. Of the states whose appellate courts have considered the issue, three-quarters have chosen to follow the modern rule.[3] See also 75 ALR5th 413 § 2 [a] (acceptance doctrine "has been severely criticized and repudiated in most states"); Keeton, supra at § 104A, p. 723 (modern rule is "almost universal"); Gray, supra at Vol. 5, § 28.10, p. 410 (acceptance doctrine is "offspring of the privity rule and the last-wrongdoer rule," which are "anachronistic and unwarranted exceptions to general negligence principles [that] are being progressively repudiated by the courts").

The majority asserts that the facts of this case do not warrant a reconsideration of the merits of the acceptance doctrine. However, the doctrine provided the framework for analysis of those facts in both the trial courts and the Court of Appeals. This hardly makes the issue "abstract."

> "When the rationales which gave meaning and coherence to a judicially created rule are no longer vital, and the rule itself is not consonant with the needs of contemporary society, a court not only has the authority but also the duty to reexamine its precedents rather than to apply by rote an antiquated formula. . . . [Cit.]"

*Robeson v. Intl. Indemnity Co.*, 248 Ga. 306, 311-312 (282 SE2d 896) (1981) (Smith, J., dissenting). Because the underpinnings of the acceptance doctrine have long been eroded, I would abandon it in favor of the modern rule, i.e., an assessment of contractor liability in accordance with general negligence principles.

I am authorized to state that Chief Justice Sears and Justice Benham join in this dissent.

---

[3] It appears that the appellate courts of Delaware, Hawaii, Maine, North Dakota, South Dakota and Vermont have not addressed the acceptance doctrine. Of the remaining 44 states, 33 have adopted the modern rule. See 75 ALR5th 413 § 3 (listing 31 states) and recent cases *Davis v. Baugh Indus. Contractors*, 150 P3d 545 (Wash. 2007) and *Peters v. Forster*, 804 NE2d 736 (Ind. 2004). The District of Columbia also follows the modern rule. See *Hanna v. Fletcher*, 231 F2d 469 (D.C. Cir. 1956).

DECIDED FEBRUARY 9, 2009 —
RECONSIDERATION DENIED MARCH 9, 2009.

*Craig A. Webster, Brown & Scoccimaro, Ralph O. Scoccimaro*, for appellants.

*Rutherford & Christie, Carrie L. Christie, Bondurant, Mixson & Elmore, Frank M. Lowrey IV, Nicole G. Iannarone*, for appellee.