### A09A1224. HOLLIS & SPANN, INC. v. HOPKINS.
(686 SE2d 817)

BERNES, Judge.
Appellee May Catherine Hopkins was injured when she fell as she traversed a handicap access ramp leading to the parking lot of a hotel where she had been a guest. Hopkins filed suit seeking damages from the hotel owner, the hotel developer, and appellant Hollis & Spann, Inc., the independent contractor who constructed the allegedly defective ramp. Hollis & Spann filed a motion for summary judgment, contending that Georgia's "acceptance doctrine" precluded a finding of its liability. Hollis & Spann argued that

it constructed the ramp in accordance with design plans provided on behalf of the hotel owner, that it subsequently rebuilt the ramp in accordance with the instructions of the City building inspector, and that the completed work was thereafter accepted by the City building inspector and the hotel owner. The trial court denied the motion, finding that there was evidence that Hollis & Spann had negligently constructed the ramp and also evidence supporting application of an exception to the acceptance doctrine. We granted Hollis & Spann's application for interlocutory appeal to review this issue. For the reasons that follow, we affirm the trial court's decision.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

So viewed, the evidence shows that in June 2003, Hopkins, a 67-year-old woman, stayed overnight with her sister at the Spring Hill Suites Hotel in Savannah. The following morning, Hopkins and her sister checked out of the hotel and were walking to their car when they came upon the handicap ramp leading to the parking lot. According to Hopkins, the ramp looked like it "was connected to the sidewalk" and she could not see the sloped sides of the ramp as she approached it. Hopkins stated that when she attempted to step onto the ramp in the area that she thought was connected to the sidewalk, "[the ramp] wasn't there" and she stumbled and fell onto the ground. Hopkins injured her foot and required medical treatment.

Hopkins alleged that her fall was caused by a defect in the construction of the ramp, which created a dangerous condition. She alleged that the ramp had an "uneven surface with drops of several inches from the sidewalk to the ramp surface and . . . the parking lot surface." She also alleged that there was a lack of "contrast with the concrete sidewalk curb to which it was attached, making it difficult to distinguish the concrete sidewalk curb from the concrete ramp." Hopkins presented expert affidavits from an architect, L. Scott Barnard, to support her claims. According to Barnard, the accessibility guidelines of the federal Americans with Disabilities Act ("ADA") and the Georgia Code mandate that the maximum slope of the side flares of a curb ramp may not exceed 1:10 and all curb ramps must have detectable warning textures. Barnard opined that the

construction drawings provided by the engineering company that designed the ramp complied with these regulatory guidelines, but the ramp constructed by Hollis & Spann did not. Barnard averred that the ramp as constructed was defective because its side flares grossly exceeded the maximum slope allowance and failed to have detectable warnings distinguishing the natural colored concrete curb ramp, including the sloped side flares, from the natural colored concrete curb surrounding the surface. He further opined that these defects in the ramp likely caused Hopkins to believe that the surface leading to the ramp was level, when in fact it was not, and likely caused her to trip and fall while attempting to step onto the ramp.

The Hollis & Spann superintendent who supervised the ramp construction deposed that the ramp was originally constructed according to the specifications of the design plan. But, the original ramp was rejected by the City building inspector. The inspector told the superintendent that the slope in the center of the ramp was too steep. The inspector directed the superintendent to rebuild the ramp so as to make the slope more gradual and to make it "comply with the code."

When the ramp was rebuilt, it was wider than before and the side flares sloped more gradually. However, Hollis & Spann did not inspect or measure the ramp to ensure that it conformed with the regulatory slope requirements. The rebuilt ramp was inspected and approved by the City inspector. The City issued a Certificate of Occupancy for the new hotel construction in November 2002. The engineering company that had drawn the design plan for the original ramp developed an "as-built" drawing after the construction was completed. The "as-built" drawing did not show that there were any problems with the ramp. There had been no other reports of falls or injuries associated with use of the ramp.

Hollis & Spann argues that it cannot be held liable for Hopkins's injuries because it did not hold itself out as an expert in ramp design, it constructed the ramp in accordance with the specifications and directions of the engineering company and City inspector, and its completed work was approved and accepted by the City inspector and the hotel owner. Hollis & Spann predicates its arguments upon Georgia's "acceptance doctrine," which generally provides that

> where a contractor who does not hold itself out as an expert in the design work such as that involved in the controversy, performs its work without negligence, and the work is approved and accepted by the owner or the one who contracted for the work on the owner's behalf, the contractor is not liable for injuries resulting from the defective design of the work.

YALE LAW LIBRARY

(Citation and punctuation omitted.) *Bragg v. Oxford Constr. Co.*, 285 Ga. 98, 99, n. 1 (674 SE2d 268) (2009). See also *David Allen Co. v. Benton*, 260 Ga. 557, 558 (398 SE2d 191) (1990). There are, however, several well-recognized exceptions to this general rule that apply when the contractor is guilty of negligence in the performance of its work. See *Bragg*, 285 Ga. at 99, n. 1; *David Allen Co.*, 260 Ga. at 558; *Shetter v. Davis Bros., Inc.*, 163 Ga. App. 230 (293 SE2d 397) (1982).

> One such exception is that the contractor is liable where the work is a nuisance per se, or inherently or intrinsically dangerous. Another is that the contractor is liable where the work done and turned over by him is so negligently defective as to be imminently dangerous to third persons.

(Citation and punctuation omitted.) *Shetter*, 163 Ga. App. at 230.

In denying Hollis & Spann's motion for summary judgment, the trial court found that evidence had been presented to show that Hollis & Spann had negligently constructed the ramp by failing to build the side flares according to the slope specifications in the design plans. The trial court further found that there was evidence creating an issue as to whether the ramp was so negligently defective as to be imminently dangerous to third persons. We agree.

1. The affidavit of Hopkins's expert, Barnard, was sufficient to create a question of fact as to whether Hollis & Spann negligently performed the ramp construction. Barnard attested that he reviewed the design plans for the ramp and that the plan specifications for the ramp's side flare slope were in accordance with the applicable federal and state regulatory mandates.[1] Barnard further opined that the ramp as constructed did not comply with the required specifications and instead had an excessively steep side flare slope that created a hazardous condition. Photographs of the ramp's side flare slope showed the condition of the ramp on the date that construction was completed and on the date of Hopkins's fall. Measurements of the side flare depicted in the photographs reflected the slope differential at issue. Viewed in its most favorable light, this evidence shows that Hollis & Spann failed to construct the ramp in accordance with the plan specifications.

Hollis & Spann nevertheless argues that it is shielded from liability because it rebuilt the ramp in accordance with instructions from the City building inspector and that the completed ramp was thereafter approved and accepted by the inspector and the hotel owner. Although the ramp was rebuilt, it is undisputed that Hollis &

---

[1] The parties do not dispute that to be compliant, the maximum slope of the side flares of a curb ramp could not exceed 1:10 in measurement.

Spann never inspected or measured the completed ramp to ensure that its slope complied with the code requirements. Thus, to the extent that the evidence reflects that the completed ramp did not comply with the code, i.e., regulatory mandates, it further reflects that the construction failed to comply with the inspector's instructions.

The fact that the hotel owner and the City inspector approved the completed ramp does not render the acceptance doctrine applicable in this case. "[I]t is too plain to be debated that if an action is negligent, approval of that negligence by another party or even a government agency, or rather of the conditions creating the negligence, does not as a matter of law excuse the negligence." *Johnson v. Fowler Elec. Co.*, 157 Ga. App. 319, 323 (2) (277 SE2d 312) (1981). See also *Bragg*, 285 Ga. at 100 (if the contractor had been negligent in the performance of the requested work to the extent that an exception to the acceptance doctrine applied, the contractor could still face liability regardless of whether or not the property owner accepted its work).

Evidence that Hollis & Spann failed to construct the ramp in compliance with the design and regulatory specifications authorized the trial court's denial of the motion for summary judgment as to the negligent construction issue. See *Lee v. Otis Elevator Co.*, 121 Ga. App. 564 (174 SE2d 476) (1970). See also *Johnson*, 157 Ga. App. at 323-324 (2). Compare *Bragg*, 285 Ga. at 99-100 (contractor was entitled to summary judgment in its favor based upon the acceptance doctrine since the undisputed evidence established that its performance was not negligent); *C. W. Matthews Contracting Co. v. Marasco*, 184 Ga. App. 150 (361 SE2d 34) (1987) (same).

2. A genuine issue of material fact also existed as to whether the constructed ramp was so negligently defective as to be imminently dangerous to third persons.[2]

Prior precedent shows that a handicap access ramp, similar to an escalator or staircase, can be dangerous to third persons if made or installed in a negligently defective manner. See *Val D'Aosta Co. v. Cross*, 241 Ga. App. 583 (526 SE2d 580) (1999) (a handicap access ramp that is noncompliant with regulations and guidelines creates a

---

[2] In light of the evidence of Hollis & Spann's negligent construction of the ramp, it is necessary to analyze whether any of the three exceptions to the acceptance doctrine would apply in this case. Compare *Bragg*, 285 Ga. at 100, n. 2 (ruling that the three exceptions to the acceptance doctrine "only apply in cases where the contractor is guilty of negligence in the performance of its work" and where no such negligence is found, analysis of these other exceptions is erroneous) (citation and punctuation omitted); *David Allen Co.*, 260 Ga. at 558 (because the evidence "established without question that the contractor complied in every regard with the plans provided to it," the three exceptions to the acceptance doctrine did not apply).

static dangerous defect); *Anderson v. Turton Dev.*, 225 Ga. App. 270, 271-273 (1) (483 SE2d 597) (1997) (a negligently constructed handicap parking ramp that does not comply with regulatory guidelines can result in injury to third persons); *Lee*, 121 Ga. App. at 565 (a negligently constructed or installed elevator, like a common staircase, can be dangerous to third persons). The question thus presented is whether the ramp in this case was imminently dangerous as constructed.

Significantly, the hotel's handicap access ramp was intended to provide accessibility and safe traverse for disabled or elderly persons in accordance with OCGA § 30-3-1 et seq.[3] Because Hopkins was elderly, she was a member of the class who the accessibility regulations were intended to protect, and the ramp was intended for her use. And, considering the special class of persons protected by the accessibility regulations, a jury would be authorized to find that the ramp's negligent construction rendered it hazardous to those third persons. Evidence that no other falls on the ramp had been reported merely presented a conflict with the evidence of Hopkins's reported fall and her expert's opinions that the defective construction of the ramp created a dangerous condition. In light of evidence reflecting that the ramp may have been defectively constructed and that Hopkins fell while attempting to walk on the potentially defective ramp, a genuine issue existed as to whether the ramp was imminently dangerous. Summary judgment therefore was precluded in this case. See *Val D'Aosta Co.*, 241 Ga. App. at 583; *Anderson*, 225 Ga. App. at 271-273 (1); *Lee*, 121 Ga. App. at 565. Compare *Ogles v. E. A. Mann & Co.*, 277 Ga. App. 22, 25 (1) (625 SE2d 425) (2005) (ruling that the acceptance doctrine applied since there was no evidence that the work was nonconforming or imminently dangerous at the time it was completed and accepted by the employer); *Carney v. JDN Constr. Co.*, 206 Ga. App. 785, 786-787 (1) (426 SE2d 611) (1992) (same); *Peachtree North Apts. v. Huffman-Wolfe Co.*, 126 Ga. App. 594, 595 (191 SE2d 485) (1972) (same).

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED NOVEMBER 13, 2009.

*Vanice H. Sikes, Jr.*, for appellant.

---

[3] OCGA § 30-3-1 provides that its chapter provisions are intended to "further the policy of the State of Georgia to encourage and enable persons with disabilities or elderly persons to participate fully in the social and economic life of Georgia" and "to eliminate, insofar as possible, unnecessary physical barriers encountered by persons with disabilities or elderly persons[.]"

*Richard H. Middleton, Jr.*, for appellee.