**THIRD DIVISION**
**ELLINGTON, P. J.,**
**BETHEL, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 30, 2018**

# In the Court of Appeals of Georgia

A18A0587. STOPANIO et al., v. LEON'S FENCE AND GUARDRAIL, LLC et al.

BETHEL, Judge.

Following a collision that resulted in the deaths of her parents Teresa and Robert Stopanio and personal injuries to herself, Angela Stopanio, individually and as personal representative of the Estates of Teresa Stopanio and Robert Stopanio, sued the Georgia Department of Transportation (GDOT) and the construction contractors who performed road work at the location where the collision occurred. GDOT moved to dismiss the complaint on the grounds that Stopanio failed to comply with the ante litem notice requirements, and the trial court granted the motion. Likewise, the contractors moved for summary judgment on the grounds that the acceptance doctrine barred any liability to Stopanio resulting from the collision and

the trial court granted their motions. For the reasons discussed in this opinion, we affirm in part, vacate in part, and remand the case with direction.

The record shows that on October 29, 2011, Stopanio was traveling in the left southbound lanes of Interstate-75 behind her parents heading to their home in Ocala, Florida. While driving through Valdosta on Interstate-75, Angela witnessed a vehicle enter her parents' lane and strike the passenger side of their SUV. The impact caused the air bags in her parents' vehicle to deploy. The parents' SUV veered off the road, struck the guardrails on the left side of the southbound lane, and struck a concrete bridge piling. The SUV burst into flames upon impact. Stopanio's parents died immediately.

In January 2012, Stopanio was made personal representative of her parents' estate and on May 20, 2013, filed an ante litem notice of claim on behalf of her parents' estate and herself with the Georgia Department of Administrative Services and GDOT. Later that same year, Stopanio filed the wrongful death and personal injury lawsuit giving rise to this appeal against GDOT and the contractors.[1] GDOT moved to dismiss Stopanio's complaint, and following a hearing on the motion, the

---

[1] Stopanio named Reames & Son Construction Co., Inc. and Road Systems, Inc. in the original lawsuit. Both companies were voluntarily dismissed from the case and are not parties to this appeal.

trial court dismissed the complaint. The contractors moved for summary judgment, which the trial court granted following a hearing on the motions. This appeal followed.

1. Stopanio argues that the trial court erred in dismissing her complaint against GDOT based on its finding that her ante litem notice was untimely. Stopanio contends that the pending criminal investigation arising out of the accident tolled the 12-month deadline for her to provide ante litem notice to the State regarding her tort claims. More specifically, Stopanio argues that in light of this Court's holding in *Harrison v. McAfee*,[2] this case should be returned to the trial court for reconsideration of its prior ruling. We agree.

This Court reviews de novo a trial court ruling on a motion to dismiss based on sovereign immunity grounds, which is a matter of law. *Williams v. Wilcox State Prison*, 341 Ga. App. 290, 291 (799 SE2d 811) (2017). "However, factual findings by the trial court in support of its legal decision are sustained if there is evidence authorizing them, and the burden of proof is on the party seeking the waiver of

---

[2] 338 Ga. App. 393, 402 (3) (788 SE2d 872) (2016) (Our holding in *Harrison* expanded the tolling provision under OCGA § 9-3-99 to all cases regardless of whether the defendant in the case was accused of committing the crime from which the cause of action arises).

immunity." *Loehle v. Ga. Dept. of Public Safety*, 334 Ga. App. 836, 836-37 (780 SE2d 469) (2015) (citations omitted).

So viewed, the evidence shows that the date of loss — that is, the date of the death and personal injury as defined by the statute — was October 29, 2011. It is undisputed that Stopanio was aware of this date of loss, as she was a witness to the accident that resulted in the death of her parents and sustained personal injuries arising out that same accident. To comply with the ante litem notice provision, Stopanio was required to submit written notice within 12 months of the date of loss — here, January 6, 2013.[3] However, she did not provide ante litem notice until May 20, 2013.

As an initial matter, it is well established that sovereign immunity is extended to the state and all of its departments and agencies, except as specifically provided by statute, such as the Georgia Tort Claims Act. *See Dep't of Transp. v. Kovalcik*, 328 Ga. App. 185, 187-188 (1) (a) (761 SE2d 584) (2014). The legislature enacted the GTCA to "eliminate the unfairness caused by a strict application of the traditional

[3] It is undisputed that Stopanio was not appointed personal representative of her parents' estate until January 6, 2012. Additionally, both GDOT and DOAS acknowledge that the ante litem 12-month period was tolled until the estates were established. Thus, the estates' 12-month deadline to submit ante litem notice of claims against the state ended on January 6, 2013.

4

sovereign immunity doctrine while, at the same time, limiting the state treasury's exposure to tort liability." *Miller v. Georgia Ports Auth.*, 266 Ga. 586, 588, (470 SE2d 426) (1996) (citations omitted); *see also* OCGA § 50-21-20 et seq. The GTCA provides that no person having a tort claim[4] against the state under this article shall bring any action against the state upon such claim without first giving notice of the claim in writing within 12 months of the date the loss[5] was discovered or should have been discovered. OCGA § 50-21-26 (a) (1).

As to the content of the notice, the claimant must state to the best of his or her knowledge: (A) The name of the state government entity, the acts or omissions of which are asserted as the basis of the claim; (B) The time of the transaction or occurrence out of which the loss arose; (C) The place of the transaction or occurrence; (D) The nature of the loss suffered; (E) The amount of the loss claimed;

---

[4] GTCA defines the term "claim" to mean "any demand against the State of Georgia for money only on account of loss caused by the tort of any state officer or employee committed while acting within the scope of his or her official duties or employment." OCGA § 50-21-22 (1).

[5] The GTCA further defines the term "loss" to mean "personal injury; disease; death; damage to tangible property, including lost wages and economic loss to the person who suffered the injury, disease, or death; pain and suffering; mental anguish; and any other element of actual damages recoverable in actions for negligence." OCGA § 50-21-22 (3).

5

and (F) The acts or omissions which caused the loss. OCGA § 50-21-26 (a) (5). Strict compliance with the foregoing requirements is a condition precedent to the claimant's right to file suit against the State under GTCA. *See Kim v. State, Dep't of Transp.*, 235 Ga. App. 480, 481 (2) (510 SE2d 50) (1998). Because the GTCA represents a limited waiver of the State's sovereign immunity crafted by the legislature, the courts lack jurisdiction to adjudicate any such claims against the State unless and until the written notice of claim has been timely presented as provided by statute. *See DeFloria v. Walker*, 317 Ga. App. 578, 580 (732 SE2d 121) (2012).

Our Supreme Court recognizes that, "the GTCA's ante litem notice provisions clearly contemplate the possibility that a claimant may have imperfect information regarding various facets of her claim at the time her notice is submitted." *Cummings v. Ga. Dep't of Juvenile Justice*, 282 Ga. 822, 825 (653 SE2d 729) (2007). However, a claimant "is not relieved from giving some notice to the State even if her knowledge is incomplete or she must rely on her belief." *Bd. of Regents of Univ. Sys. of Ga. v. Myers*, 295 Ga. 843, 846-847 (764 SE2d 543) (2014) (citation omitted).

Here, Stopanio argues that the trial court should reconsider its prior ruling on GDOT's motion to dismiss because, in light of our holding in *Harrison*, her claims are not barred by the time restrictions contained in the ante litem notice provision.

6

OCGA § 9-3-99 provides that

The running of the period of limitations with respect to any cause of action in tort that may be brought by the victim of an alleged crime which arises out of the facts and circumstances relating to the commission of such alleged crime committed in this state shall be tolled from the date of the commission of the alleged crime or the act giving rise to such action in tort until the prosecution of such crime or act has become final or otherwise terminated, provided that such time does not exceed six years...

By its plain language, the statute contemplates extending the time in which a victim may file a tort action where there are pending criminal charges arising out of the same facts or circumstances. Prior to *Harrison*, Georgia courts interpreted OCGA § 9-3-99 to apply only in cases where the defendant in the tort action was also accused of committing the crime from which the cause of action arose. *See e.g. Orr v. River Edge Cmty. Serv. Bd.*, 331 Ga. App. 228, 230 (1) (770 SE2d 308) (2015); *Mays v. Target Corp.*, 322 Ga. App. 44, 46 (743 SE2d 603) (2013); *Columbia Cty. v. Branton*, 304 Ga. App. 149, 152-153 (1) (695 SE2d 674) (2010). The *Harrison* decision expanded the scope of the tolling provision to apply to tort claims even where the defendant is not accused of committing a crime against the plaintiff. 338 Ga. App. at 402 (3).

7

Although the case law at the time the trial court granted GDOT's motion to dismiss foreclosed an argument based on the application of OCGA § 9-3-99, the final judgment of the trial court was not entered until after *Harrison* established a significant change in the way the courts interpret OCGA § 9-3-99. While we express no opinion as to the effect, if any, the tolling provision of OCGA § 9-3-99 has on the time requirement provision of the ante litem statute,[6] this Court's decision in *Harrison* is applicable to this case and the trial court should be given an opportunity to review the facts of this case in light of *Harrison*.[7] *See Long v. Bruner*, 171 Ga. App. 124, 125 (2) (318 SE2d 818) (1984) ("A reviewing court should apply the law as it exists at the time of its judgment rather than the law prevailing at the rendition of the judgment under review, and may therefore reverse a judgment that was correct at the time it was rendered and affirm a judgment that was erroneous at the time,

[6] In *Howard v. State*, this Court expressed, in dicta, the possibility that the ante litem time requirement is itself a statute of limitation and may therefore be subject to the general law of this State with respect to the tolling of statutes of limitation. 226 Ga. App. 543, 546 (2) (487 SE2d 112) (1997).

[7] Specifically, Stopanio argues she was unable to obtain records generated from the accident investigation which prevented her from discovering the evidence necessary for her to comply with the statute. Stopanio contends that until receiving the completed accident investigation report in April 2013, she did not know that she had potential claims against GDOT, and that immediately upon discovery of her potential claims against the state she provided timely notice.

8

where the law has been changed in the meantime and where such application of the new law will impair no vested right under the prior law." (citation and emphasis omitted)).

Thus, we vacate the trial court's order dismissing GDOT and remand the case to the trial court. The trial court is directed to reconsider its ruling on whether Stopanio timely notified the State of her claims in compliance with GTCA's ante litem notice provisions in light of this Court's holding in *Harrison.*

2. Stopiano next argues that the trial court erred in granting summary judgment to the contractors because a factual dispute as to when GDOT accepted the work performed by the contractors precluded a judgment in their favor. "Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant." *Ga. Dep't of Admin. Servs. v. McCoy*, 340 Ga. App. 877, 880 (798 SE2d 687) (2017) (citation omitted). *See also* OCGA § 9-11-56 (c).

So viewed, the record shows that in 2010, GDOT entered into a maintenance contract with The Scruggs Company and Reames & Son Construction Co. Inc., to

serve as the general contractors for a highway asphalt resurfacing project along a portion of Interstate-75.[8] Leon's Fence and Guardrail, LLC was to complete certain guardrail improvements as part of this project. Scruggs was to resurface the asphalt on the southbound lanes and Reames was subcontracted to resurface the asphalt on the northbound lanes.

It is undisputed that the contractors were not responsible for the design of the guardrails, nor did they hold themselves out as experts on such design. After the contractors performed the work, they notified GDOT in November 2010 that the project had been completed and requested a maintenance acceptance.[9] GDOT conducted its final inspection of the project on November 29, 2010. On March 1, 2011, GDOT issued a maintenance acceptance letter with regard to the project, noting that all punch list items had been completed December 31, 2010. As part of issuing the maintenance acceptance letter, GDOT reassumed control over the maintenance of that portion of the highway beginning January 4, 2011. In January 2012, GDOT

---

[8] Reames is not a party to this appeal.

[9] A GDOT witness testified that a maintenance acceptance is a document whereby the GDOT determines that the remaining items necessary for final acceptance of a project are beyond the contractors control and specifically notes that the contractor has fulfilled its obligations with respect to the work and has supplied the necessary documentation to complete the final acceptance process.

issued a final acceptance letter, marking December 28, 2011 as the final acceptance date. It is on the basis of the January 2012 final acceptance letter that Stopanio contends a factual dispute exists as to when GDOT regained control of the subject portion of the highway. Notwithstanding when GDOT accepted the contractor's work, Stopanio further contends that a fact issue remains as to whether the work accepted by GDOT was inherently and imminently dangerous. We disagree with Stopanio that any factual dispute remains with respect to both issues.

    a. *Acceptance by GDOT*

> The acceptance doctrine provides that when the work of an independent contractor is completed, turned over to, and accepted by the owner, the contractor is not liable to third persons for damages or injuries subsequently suffered by reason of the condition of the work, even though he was negligent in carrying out the contract, at least, if the defect is not hidden but readily observable on reasonable inspection.

*Ogles v. E.A. Mann & Co.*, 277 Ga. App. 22, 24 (1) (625 SE2d 425) (2005) (citation and punctuation omitted).

As this Court has previously stated in cases involving roadway work, "a road contractor cannot be held responsible for completed work over which it no longer

11

exercises any control. A contractor has no authority, control or responsibility over public ways outside the boundary of its contract provisions." *Baker v. Reynolds Trucking Co.*, 181 Ga. App. 242, 243 (351 SE2d 657) (1986) (citations and punctuation omitted).

Our review of the record reveals that the trial court was correct in concluding that GDOT resumed actual physical control over the subject portion of the highway on or before January 4, 2011, after having conducted its final inspection in November 2010 and confirming items on the punch list were completed. Although the final acceptance was not effective until December 2011 (letter issued in January 2012), two months after the accident, it is clear from the record that the final letter merely memorialized what had already transpired between GDOT and the contractors. The record demonstrates that upon issuing the maintenance acceptance in March 2011, the contractors were no longer in control of the work site, had no authority to perform any additional work on the subject stretch of highway absent express direction from GDOT, and the completed work had been inspected and approved by GDOT. A GDOT project engineer testified in a deposition that after the work was performed by the contractors, and before the maintenance acceptance was issued, GDOT inspected the site and approved and accepted the work. Thus, under these facts, we find no

12

genuine issue of fact remains as to whether GDOT accepted the work tendered by the contractors prior to the accident, and the trial court did not err in its application of the acceptance doctrine.

*b. Inherent and Imminent Danger*

This Court recognizes the following two exceptions to the acceptance doctrine that allows a contractor to be liable for work accepted by its employer: (1) contractor may be liable where the work is a nuisance per se, or inherently or intrinsically dangerous; or (2) a contractor may be liable where the work is so negligently defective as to be imminently dangerous to third persons. *See Peachtree N. Apartments Co. v. Huffman-Wolfe Co.*, 126 Ga. App. 594, 595 (191 SE2d 485) (1972). Stopanio argues that even if GDOT accepted the work prior to the accident, a factual dispute exists as to whether the work performed by the contractors was negligent and imminently dangerous to third parties. Specifically, Stopanio contends that because the contractors did not install the full length of the guardrail as specified in the contract, their failure to comply with GDOT's specifications creates a fact question as to whether their work was negligently performed. This argument is unsupported by the record.

13

It is clear from the record that the guardrails installed in the subject area were shorter than what was initially estimated in GDOT's construction contract. However, we find no evidence in the record that supports Stopanio's conclusion that the "too short" guard rail created an imminent danger to the public. While it is clear that the contract stated a specific length required for the guardrails in the construction project, the evidence shows that those specifications in the contract were estimates, and not exact requirements. The evidence further shows that under the terms of the contract, the work performed by the contractors was under the direct supervision of GDOT and any discrepancy in what was installed verus what was listed in the contract was necessarily authorized and approved by GDOT's inspectors during the project.

Stopanio's asserts that GDOT had to have a reason for specifying a certain length in the contract, but cannot show anywhere in the record that the shorter length posed an imminent danger. *See McCarter v. La Hacienda Condo. Ass'n, Inc.*, 255 Ga. App. 68, 69 (1) (564 SE2d 483) (2002) (noting that conclusions that are unsupported by specific facts cannot be considered as evidence). The accident giving rise to this appeal occurred nine months after the contractors completed the work, GDOT regained control of that work area, and thousands of motorist traversed through the area. Thus, we discern no evidence to suggest that the work performed by the

contractors posed an imminent threat to the public. *See Bragg v. Oxford Const. Co.*, 289 Ga. App. 638, 640-641 (a) (658 SE2d 198) (2008), *aff'd*, 285 Ga. 98 (674 SE2d 268) (2009). *Compare Johnson v. E.A. Mann & Co.*, 273 Ga. App. 716, 719 (2) (616 SE2d 98) (2005) (summary judgment to road contractor was not appropriate where there was evidence that the accident occurred before the DOT accepted the road work).

Moreover, Stopanio has not identified, and we cannot find any evidence in the record that indicates that the work completed by the contractors was inherently dangerous, or involved any peculiar risk of bodily harm to others unless special precautions are taken. This Court has previously described inherently dangerous work as work that includes the use of propane gas, blasting operations, fumigation of premises, spraying from airplanes, the escape of a dangerous animal, emitting sparks from a railway engine and raising an embankment that is unguarded. *See Cmty. Gas Co. v. Williams*, 87 Ga. App. 68, 78 (73 SE2d 119) (1952); *see also Ogles*, 277 Ga. App. at 25. We find no support in the record for Stopanio's argument that installing guardrails along the highway is in and of itself an inherently dangerous activity.

Finally, we find nothing in the record to suggest that the guardrails had any hidden defect when the GDOT accepted the work. The record shows that GDOT was

15

aware of the amount of materials purchased to complete the project, present during the work, and inspected the work upon its completion. Since completing the work, GDOT has not requested that the contractors return to correct or change any portion of the work completed. Contrary to Stopanio's argument, evidence that the guardrails are shorter than originally specified in the contract alone does not demonstrate that at the time the work was accepted GDOT was unaware of the alleged deficiency or that by being shorter the guardrails were defective in some way. *See Brown v. Seaboard Const. Co.*, 330 Ga. App. 778, 781 (769 SE2d 530) (2015) (no exception to acceptance doctrine where record void of evidence of hidden defect at the time work was accepted).

Because the record reveals that the contractors performed the requested work according to the direction and supervision of GDOT, the work was accepted by GDOT, and control of the work area was return GDOT before the accident giving rise to this case, and because there is no evidence that any exception to the acceptance doctrine applies, the trial court did not err in granting summary judgment in favor of the contractors.

*Judgment affirmed in part and vacated in part, and case remanded with direction. Ellington, P.J., and Senior Appellate Judge Herbert E. Phipps, concur.*

16