306 Ga. 102
FINAL COPY

S19Q0249.  THOMASTON ACQUISITION, LLC v. PIEDMONT CONSTRUCTION GROUP, INC. et al.

NAHMIAS, Presiding Justice.

This case is before our Court on certified questions from the United States District Court for the Middle District of Georgia regarding the scope of the "acceptance doctrine" in negligent construction tort cases. At issue is whether and how the acceptance doctrine applies as a defense against a claim brought by a subsequent purchaser of allegedly negligently constructed buildings.

1. In 2011, Thomaston Crossing, LLC (the "original owner") entered into a construction contract with appellee Piedmont Construction Group, Inc. to build an apartment complex in Macon. Piedmont then retained two subcontractors — appellees Alan Frank Roofing Company and Triad Mechanical Company, Inc. — to construct the roof and the HVAC system, respectively. In 2014, the

complex was completed, turned over to, and accepted by the original owner. In 2016, the original owner sold the apartment complex to appellant Thomaston Acquisition, LLC ("Thomaston") pursuant to an "as is" agreement.

Shortly after the sale, Thomaston allegedly discovered evidence that the roof and HVAC system had been negligently constructed. Thomaston filed suit against Piedmont, asserting a claim for negligent construction of the roof and HVAC system and a claim for breach of contract/implied warranty. Piedmont then filed a third-party complaint against Alan Frank Roofing and Triad Mechanical because both companies had allegedly agreed to indemnify Piedmont for losses arising out of their work.

Each of the appellees later moved for summary judgment based in part on the defense that Thomaston's negligent construction claim is barred by the acceptance doctrine. On September 27, 2018, the district court certified the following two questions to our Court:

> 1. After construction of real property is completed, and the property is sold by the original owner to a subsequent bona fide purchaser, does the

acceptance doctrine apply to a negligent construction claim brought by a subsequent purchaser who is the current owner-operator of the property at issue?

2. If the acceptance doctrine does apply, to whose inspection does the analysis of whether the defect(s) was "readily observable on reasonable inspection" relate: the original owner's inspection, or a subsequent owner's inspection?

As explained below, we conclude that the acceptance doctrine does apply to Thomaston's claim and that "readily observable upon reasonable inspection" refers to the original owner's inspection. [1]

---

[1] We note at the outset that the acceptance doctrine is typically asserted when a plaintiff seeks recovery for personal injury or damage to other property caused by defective construction work, rather than recovery based on the defective work itself. See, e.g., *Powell v. Ledbetter Bros., Inc.*, 251 Ga. 649 (307 SE2d 663) (1983) (damage to other property); *Stopanio v. Leon's Fence & Guardrail, LLC*, 346 Ga. App. 18 (815 SE2d 232) (2018) (personal injury); *Clive v. Gregory*, 280 Ga. App. 836 (635 SE2d 188) (2006) (personal injury and damage to other property). Here, by contrast, Thomaston appears to seek recovery for the allegedly defective roof and HVAC system rather than for any personal injury or damage to other property caused by the alleged defects.

The typical context of acceptance doctrine cases is perhaps due to the "economic loss rule." As one treatise explains: "In its most widely accepted form, the doctrine of economic loss bars the use of negligence or strict liability theories for recovery of economic losses arising out of commercial transactions where the loss is not a consequence of an event causing personal injury or damage to other property." 6 Phillip L. Bruner & Patrick J. O'Connor, Jr., Bruner & O'Connor on Construction Law § 19:10 (June 2018 update).

In the context of construction, "economic loss" includes the cost to repair or replace defective materials, damage to a structure, diminution in value of a damaged structure not repaired, loss of

2. (a) This Court long ago explained the acceptance doctrine as follows:

> [A]n independent contractor is not liable for injuries to a third person, occurring after the contractor has completed the work and turned it over to the owner or employer and the same has been accepted by him, though the injury result from the contractor's failure to properly carry out his contract.

*Young v. Smith & Kelly Co.*, 124 Ga. 475, 476 (52 SE 765) (1905).[2]

The general rule in nineteenth century product liability law was

---

use or delay in utilizing property for its intended purposes, and related lost profits, lost revenue, and costs. . . . Third parties lacking contractual rights have no legal basis for recovery of economic loss on theories of tortious conduct that cause neither personal injury nor damage to property beyond the defective property itself. Notwithstanding such straightforward distinctions, third party recovery in tort for economic loss caused by breaches of contract or warranty duties owed between others has been for decades a subject of heated controversy. There has been a definite lack of uniform treatment.

Id. (footnotes omitted).

The appellees raised the economic loss rule in their motions for summary judgment. But the district court has not yet ruled on that issue and did not pose a question to us about it, so we do not opine on its application in this case except to note that this Court appears never to have squarely considered whether or how the rule would apply in a negligent construction case, although the Court of Appeals has. See *Rowe Dev. Corp. v. Akin & Flanders, Inc.*, 240 Ga. App. 766, 769 (525 SE2d 123) (1999) (holding that the economic loss rule did not apply to a negligent construction claim seeking recovery for a collapsed parking lot).

[2] The acceptance doctrine is also referred to as the completed work doctrine, the completed and accepted rule, and similar formulations.

that a manufacturer's liability for injuries caused by a defective product was limited to the original purchaser or his privies in the purchase contract. See W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 96, at 681 (5th ed. 1984). This rule was extended to building contractors performing original work and contractors performing repairs or installing parts. See id. § 104A, at 722.

The acceptance doctrine shields contractors from liability for injuries to third parties resulting from their work at the moment the work is turned over to and accepted by the owner.

> The owner-employer can reject work which does not comply with the agreement and which may be defective or create either a latent or patent hazard. The owner is best situated to foresee and to guard against dangers to users of the premises, because he alone may know how he expects the premises to be utilized.

Frank M. Eldridge, Personal Injury and Property Damage: Causation & Parties, The Law in Georgia § 5-9, at 108 (1978). By accepting the completed work, presumably after a reasonably careful inspection to identify any defects, the owner adopts the work as his own, "deprives the contractor of all opportunity to rectify his

wrong," bears "the immediate duty to make [the premises] safe," and is therefore accountable for future injuries. Emmanuel S. Tipon, Modern Status of Rules Regarding Tort Liability of Building or Construction Contractor for Injury or Damage to Third Person After Completion and Acceptance of Work; "Completed and Accepted" Rule, 74 ALR5th 523, § 4 (1999).

Over time, many courts began to recognize a variety of exceptions to the general rule barring liability without privity. In the product liability context, the exceptions swallowed the rule, and the privity requirement was widely abandoned in the early twentieth century. See *Bragg v. Oxford Constr. Co.*, 285 Ga. 98, 101 (674 SE2d 268) (2009) (Hunstein, P. J., dissenting). In Georgia, this abandonment was recognized by statute in 1968. See id. See also Ga. L. 1968, p. 1166 (enacting what is now OCGA § 51-1-11 (b) to provide that breach of implied warranty tort actions may be brought against manufacturers of new personal property "irrespective of privity").

In the context of building contractors, Georgia courts have recognized a handful of exceptions to the acceptance doctrine. Most

significantly, the doctrine does not bar a third party's claim for injuries suffered as a result of a defect hidden from reasonable inspection. See *Smith v. Dabbs-Williams Gen. Contractors, LLC*, 287 Ga. App. 646, 647 (653 SE2d 87) (2007) (explaining that the acceptance doctrine applies to a negligent construction claim "if the defect is not hidden but readily observable on reasonable inspection" (citation and punctuation omitted)). Other exceptions are recognized for claims based on work or repairs that were inherently or intrinsically dangerous, constituted a nuisance per se, or were "so negligently defective as to be imminently dangerous to third persons." *David Allen Co. v. Benton*, 260 Ga. 557, 558 (398 SE2d 191) (1990) (citation and punctuation omitted). Our courts also recognize an exception for claims against a contractor "who is an expert in the design of the type of work being done" and who "performs a contract in accordance with plans supplied to [the contractor]," if the plans supplied to the contractor contained a serious and dangerous defect that the expert should have known would be harmful to third parties. Id. (explaining that an expert contractor "may not ignore

defects in the design from which [the contractor] is to work"). See also *Shetter v. Davis Bros., Inc.*, 163 Ga. App. 230, 232 (293 SE2d 397) (1982).

Thomaston points out that most of our sister states have abandoned the acceptance doctrine in favor of the "foreseeability doctrine," which has no privity requirement.[3] Just a decade ago, however, this Court considered and rejected the argument that we should overrule our longstanding precedent in favor of the foreseeability doctrine. See *Bragg*, 285 Ga. at 100-102. The majority opinion in *Bragg* said that the acceptance doctrine would continue to be applied in Georgia until "changed by express statutory enactment or by necessary implication" from a legislative enactment. Id. at 100 (citation and punctuation omitted). Since then,

---

[3] Under the foreseeability doctrine,

a building or construction contractor is liable for injury or damage to a third person even after completion of the work and its acceptance by the owner where it was reasonably foreseeable that a third person would be injured by such work on account of the contractor's negligence or failure to disclose a dangerous condition known to such contractor.

*Bragg*, 285 Ga. at 101 (Hunstein, P. J., dissenting) (citation and punctuation omitted).

the General Assembly has not enacted or amended any statute purporting to modify or abrogate the acceptance doctrine, so the privity requirement remains intact as the foundation for the doctrine in the construction context. Nor do the circumstances of this case "actually demonstrate why the doctrine proves to be inadequate." Id. at 101. Indeed, it is not clear that the acceptance doctrine even needs to be invoked in this case. See footnote 1 above. We see no persuasive reason to reconsider the traditional acceptance doctrine in this case, so under Georgia law, the acceptance doctrine continues to shield contractors from liability for negligent construction claims brought by a third party — meaning someone who was neither a party to nor in privity with a party to the construction contract — unless one of the above-mentioned exceptions applies.

(b) The appellees argue that Thomaston is such a third party because it was neither a party to nor in privity with a party to the contract for construction of the apartment complex. We agree. As discussed previously, this Court explained more than a century ago

that the acceptance doctrine applies to completed work that has been "turned . . . over to the owner or employer and . . . has been accepted by him." *Young*, 124 Ga. at 476. See also *Smith*, 287 Ga. App. at 647 ("'Where the work of an independent contractor is completed, turned over to, and accepted by the owner, the contractor is not liable to third persons . . . .'" (citation omitted)). As a subsequent purchaser, Thomaston was not a party to the construction contract, which was entered into in 2011. The appellees were not hired by Thomaston; they were hired by the original owner. Nor was Thomaston the owner of the apartment complex when its construction was completed in 2014; the original owner accepted it. Thomaston had no authority to inspect, accept, or ratify the allegedly defective work or to assume control of the property from the appellees when it was turned over to the original owner. It is therefore axiomatic that Thomaston is a third party.

Without any real claim of privity, Thomaston nevertheless contends that it should be treated like the original owner because it is the current owner-occupier of the property. But doing so would

undermine the acceptance doctrine's foundational purpose of shielding contractors from liability for injuries occurring after the owner has accepted the completed work, thereby assuming responsibility for future injuries. There is no "current owner-occupier" or "subsequent purchaser" exception to the acceptance doctrine, and the facts of this case do not compel us to recognize one here. See *Bragg*, 285 Ga. at 100 ("[T]he dissent makes no effort to explain why the facts of this case would dictate that a change to this longstanding law needs to be made."). Indeed, Thomaston cites no Georgia case holding that a subsequent purchaser is exempted from the acceptance doctrine.[4]

---

[4] Even if we were inclined to treat Thomaston like the original owner, we question whether an owner who was a party to the construction contract would have a viable negligent construction claim on these facts. (In posing its first question, the district court cited *Jai Ganesh Lodging, Inc. v. David M. Smith, Inc.*, 328 Ga. App. 713 (760 SE2d 718) (2014), a case in which the Court of Appeals "assume[d] that the acceptance doctrine applies both to owners and to third parties," and then held that the doctrine did not apply on summary judgment because there was a fact question about whether the defect at issue was hidden. Id. at 724.) The acceptance doctrine shifts liability from the contractor to the owner at the time the work is accepted by that owner. So if we treated Thomaston like the original owner, Thomaston may be the responsible party. Moreover, insofar as Thomaston seeks recovery in tort for the defective roof and HVAC system, as opposed to personal injury or damage

After the work has been accepted, a contractor generally has no authority to inspect or make changes to the property, and it may not be authorized even to enter the premises. As our Court of Appeals has explained many times in the context of road contractors, with the exceptions noted earlier, a "'contractor cannot be held responsible for completed work over which it no longer exercises any control.'" *Ogles v. E.A. Mann & Co.*, 277 Ga. App. 22, 24 (625 SE2d 425) (2005) (citation omitted). This rationale is particularly salient under the facts of this case. When the appellees completed their work in 2014, the original owner could have refused to accept the work altogether or accepted it on the condition that the appellees would repair any readily observable defects. But the original owner did not do that; it accepted the apartment complex, and upon that acceptance, all liability for readily observable defects shifted from the appellees to the original owner. After that time, the

_____

to other property caused by the defective roof or HVAC system, the claim might be barred by the economic loss rule. See footnote 1 above. But we need not resolve these issues today, because whether and how the acceptance doctrine or the economic loss rule would apply to the same sort of negligent construction claim if brought by an original owner is not before us.

appellees had no control over the property and no authority to repair or maintain it. When the original owner sold the complex to Thomaston in 2016 — two years after construction was completed, turned over to, and accepted by the original owner — the liability did not shift back to the appellees.

Contrary to Thomaston's ominous warnings, our decision today does not leave subsequent purchasers of real property unprotected. Subsequent purchasers can protect themselves from injuries caused by readily observable defects by adequately inspecting and refusing to purchase defective property or demanding repairs by the seller before closing. Subsequent purchasers also need not purchase property with an "as is" contract (as Thomaston did), which could potentially cut off any contract claims against the seller. Nor does our decision eradicate the negligent construction tort claim, as Thomaston contends. The claim remains a viable cause of action for third parties (including Thomaston) if one of the exceptions to the

acceptance doctrine applies.[5]

3. The district court also asked us whether, under the hidden defect exception, the phrase "readily observable on reasonable inspection" (which is used in acceptance doctrine cases including *Smith*, 287 Ga. App. at 647) refers to the original owner's inspection or a subsequent owner's inspection. The parties all contend that the only inspection that matters is the one that was (or should have been) conducted before the owner accepted the work. We agree.

As explained above, the acceptance doctrine shifts liability for injuries caused by readily observable defects away from the contractor and onto the owner at the moment the owner accepts the

---

[5] The appellees contend that once construction work has been accepted and the original owner sells the property to someone else, any negligent construction claim is "dead and cannot be brought back to life" by one of the exceptions. We disagree. The acceptance doctrine does not shield contractors from liability for claims by third parties for personal injuries or damage to other property caused by defects that are hidden, that constitute nuisances per se, that are inherently dangerous, or that come under any other recognized exception. See, e.g., *Smith*, 287 Ga. App. at 647 ("*Unless the work performed by the contractor falls within an exception to the doctrine*, 'when the work is finished by (the contractor) and accepted by his employer, the liability of the (contractor) generally ceases and the employer becomes answerable for damages which may thereafter accrue from the defective conditions of the work.'" (citation omitted; emphasis added)). Sale of the property does not eliminate these exceptions.

defective work. At that point, the contractor no longer has control over the condition of the property; a contractor does not become liable for a defect that was readily observable when the original owner accepted the work but is no longer readily observable days, months, or years later when the original owner sells the property. See, e.g., *Smith*, 287 Ga. App. at 648-649 (holding that evidence that a hidden defect developed over time was not sufficient to establish that the defect existed at the time the work was accepted by the owner). Thus, under the hidden defect exception to the acceptance doctrine, a party asserting a negligent construction claim must show that the defect was not "readily observable on reasonable inspection" at the time that the work was completed, turned over to, and accepted by the original owner.

Certified questions answered. All the Justices concur.

Decided June 3, 2019.

Certified questions from the United States District Court for the Middle District of Georgia.

<u>Dentons US, Nathan L. Garroway, Jeffrey A. Zachman, Gregory T. Wolf</u>, for appellant.

<u>James Bates Brannan Groover, Duke R. Groover, Lee M. Gillis, Jr.; Gray, Rust, St. Amand, Moffett & Brieske, Matthew G. Moffett, Jacquelyn D. Smith; Jones Cork & Miller, Christopher J. Arnold, Rufus D. Sams III; Adams, Hemingway & Wilson, Kathryn M. Willis</u>, for appellees.